STATE OF IOWA, Appellee, v. LEN SILKA, Appellant.

**INTOXICATING LIQUORS:** Injunction—Temporary Hearing—Costs.
1  On the hearing, in vacation, for temporary injunction against one of several defendants, it is quite proper for the court to provide that the costs of said particular hearing shall be taxed against said defendant, and not against his co-defendants.

**INTOXICATING LIQUORS:** Injunction—Fermentation Subsequent
2  to Purchase. Evidence reviewed, and held insufficient to show that the admitted quantity of alcohol in a beverage at the time it was analyzed was caused by fermentation *after* it was purchased and before it was so analyzed.

**INTOXICATING LIQUORS:** Injunction—Improper Form of Decree.
3  A decree should not be entered against the sale of a particular named beverage which is known by a nonstatutory name, and which may or may not contain alcohol, depending on conditions of heat, etc. The decree should be against the sale of any beverage containing alcohol, regardless of name. .

*Appeal from Fayette District Court.*—A. N. HOBSON, Judge.

TUESDAY, MARCH 13, 1917.

ACTION to enjoin defendant from keeping and selling intoxicating liquor in a building on the premises described in the petition. A trial was had in vacation as to one of the defendants, Len Silka, on the application for a temporary injunction on August 19, 1916. The decree provides that:

"He is hereby temporarily enjoined and restrained from selling and keeping for sale intoxicating liquors, including 'Golden Grain Juice,' upon Lot 33, Block 2, Oelwein, Iowa. * * * It is further ordered that the costs upon the hearing for temporary writ of injunction be taxed against defendant, Len Silka, * * * and that the question of liability of other defendants, including the premises, be deferred until final hearing."

The defendant appeals.—*Modified and Affirmed.*

*E. R. Acres,* for appellant.

*H. M. Havner,* Attorney General, *H. H. Carter,* Assistant Attorney General, and *James D. Cooney,* County Attorney, for appellee.

PRESTON, J.—It is appellant's contention that there is no evidence to sustain the order for temporary injunction, and that the judge was without jurisdiction to enter a judgment against the defendant for costs in vacation.

1. INTOXICATING LIQUORS : injunction : temporary hearing : costs.

1. As to the second point, we think the decree before set out does not render any judgment against defendant for costs. It simply provides that the costs on the temporary injunction be taxed to him. We take it this was because such costs were made in the contest made by this defendant, and that, as between him and the other defendants, they should be taxed to him, and that the cause will be heard later as to other defendants. The matter of judgment will doubtless be taken care of on final hearing.

2. INTOXICATING LIQUORS : injunction : termentation subsequent to purchase.

2. As to the sufficiency of the evidence, a sample of Golden Grain Juice was purchased by the sheriff from the defendant, August 2, 1916, and on August 4th the sheriff sent it to Des Moines for analysis. The analysis was made on August 7th, and it was shown that the liquor contained 1.45 per cent alcohol. It was being sold

by defendant as a beverage, and, if it contained that amount of alcohol at the time of the sale, defendant concedes that the injunction was properly issued. Defendant's witnesses do not deny that the sample contained the amount of alcohol stated, at the time of the analysis, but they say that this was not a fair test under the circumstances.

It appears from the evidence that, on the date stated, the sheriff went to defendant's place of business and called for near beer, and purchased what the appellant now claims was Golden Grain Juice. The liquor purchased was drawn from a faucet from a keg, or other receptacle, which was in the barroom, in which was a large counter 20 to 24 feet long. Other people were in the room when the sheriff made his purchase, and sales were made to others of liquor drawn from the same faucet. The liquid which the sheriff purchased was placed in a quart bottle which he had procured from a drug store; the bottle was not sterilized, but the sheriff says it was clean; it was corked at once with a new cork. The liquor was taken by the sheriff to West Union, a wire placed over the cork and wrapped around over the bottle at the top and twisted several times. It was then sealed with sealing wax and wrapped up with paper and placed in a carton with other bottles, and shipped by express, on August 4, 1916, to the Iowa Food and Dairy Commission. It was kept by the sheriff in his safe until sent away.

The only question in the case is, then, as to whether it was shown by the evidence that the liquor in question contained alcohol on August 2d, at the time it was purchased. Without setting out all the evidence, we shall set out enough to show that, on the whole record, defendant was violating the law by the sale of intoxicating liquors, and that the sale of the Golden Grain Juice in question was contrary to law. We shall confine ourselves as closely as possible to the evidence on the question as to whether or not the liquor in question was intoxicating at the time

of the sale, on August 2d. It is said in argument by appellant that this is a test case to determine whether Golden Grain Juice is intoxicating; that it is made to sell in dry territory. We are not concerned with the name of this or any other liquor sold as a beverage. The only question in this case is whether the particular sample in question, whether called Golden Grain Juice or near beer, is such as is prohibited by law.

Turning now to the evidence, it is not claimed by the State that, after the sheriff purchased the sample in question, it was kept at a temperature below 45 degrees Fahrenheit. It is conceded by defendant that, if this liquor is not kept at a temperature below 45, it will ferment and contain alcohol. The liquor in question looks like beer and foams like beer; it is made in a brewery where beer is manufactured by the Minneapolis Brewing Company.

Witness Just says that he is the originator of Golden Grain Juice, and that he had it patented in 1915; that he is the superintendent of the Minneapolis Brewing Company; that he has studied fermentology, the chemistry applied in brewing; that he was brewmaster in Berlin, Germany, and in Russia, also in the Schlitz Brewery in Milwaukee; that he superintends the making of this kind of liquor and knows the ingredients; that there is no malt in it; that it is made out of brewery syrup, which is purchased in the open market, and this is boiled together with water, hops and a foam retainer added, and is cooled down; after it is cooled down, it is carbonated and stored; that it is not fermented at the brewery, and no material that goes into it goes through any process of fermentation; that it is made out of water and hops and fermentable sugar— that is, out of glucose, which is fermentable; that there will be no fermentation as long as it is kept cold; that if it should ferment, the liquid would be roily, cloudy—first of all it would be cloudy. This brew syrup is not a chemical

flavor that takes the place of malt; "this is a corn syrup which takes the place of the malt that is in our beer; the malt if it is converted is sugar too; the brew syrup takes the same place in the formula as hops and malt brew take in beer; only cooling the Golden Grain Juice prevents this sugar in the brew syrup from fermenting. The thing that keeps the Golden Grain Juice from being an intoxicating liquor is a 45-degree refrigerator. As soon as the brewing company loses control of this, it may assume the character of an intoxicating liquor; it may do that by the temperature of heat. This brew syrup is made out of corn.

"I do with the hops the same as I do with the hops I put into lager beer. There is no fermentation in the Golden Grain Juice in the brewery when we keep the conditions right. Q. You don't mean that there is no fermentation in any of it? A. I can't say. Q. You can't say that there isn't any? A. No, sir. Q. Would it be possible to drink it if it had fermented some? A. I don't think anybody would like to drink it, because as soon as fermentation takes place in a very small degree, the beverage would get cloudy; it would get roily. It is possible to ship it and sell it without fermentation if it is kept cool. Q. If it is kept at the point of freezing all the time? A. Yes, sir. Q. That is the only condition under which it would be possible? A. Yes, sir. In shipping Golden Grain Juice, we put a revenue stamp on the keg—a regular government alcoholic revenue stamp; we have to on account of the package being recognized as a beer package. Q. I say in a commercial sense you recognize the cask of Golden Grain Juice as beer? A. The package as such, yes, sir. I don't know whether defendant when buying his stuff that he retails buys it direct from the factory or from a jobber; don't know the length of time that expires after the grain juice leaves the brewery until it is sold; couldn't testify that

the grain juice that Mr. Silka sold did not contain alcohol when he sold it."

Other witnesses testify as chemists that they had examined different samples of Golden Grain Juice and found it not intoxicating and that it did not contain malt or alcohol. Defendant testifies that he was a wholesaler of Golden Grain Juice to other dealers in Oelwein and out of town; claims that the Golden Grain Juice he handled was received in iced cars and was kept cold afterward; that he remembers the sheriff's coming in there once; does not remember what he asked for; that he gave him Golden Grain Juice; that he drew it from a faucet in a bottle; that it was clear and nice when he sold it.

"Q. Did the sheriff ask you for a sample of near beer? A. Yes, I think. Q. And you gave it to him? A. Yes, sir. Some call it one thing and some another; some ask for near beer and some ask for grain juice and some ask for malta. Q. And you have sold near beer to a great many people? A. Yes, sir. We retail about a barrel over the bar every day in glasses."

Witness Kinney testifies:

"I know of a product that is known as near beer; near beers are products that are made by distillation of beer, removing the alcohol; contain practically the same contents and composition of ordinary beer, but the alcohol has been removed, or supposed to be removed; beer with the alcohol, or nearly all of it, extracted by a distillation."

In rebuttal, witness Dewey testifies that he was in defendant's place of business in the spring of 1916.

"Q. Did you see any kegs of liquid or near beer sitting in the back of his store at that time?"

Over objection, he answered:

"I did. It was not in the refrigerator or ice box; there were several kegs. By the heft of them, I should judge they were full. The defendant said that the last car

that he got was not properly iced, and that it had given quite a little bit of trouble in cooling it out."

This evidence is denied by defendant, as is also testimony of Dewey as to kegs in the back of his store and not in the refrigerator. The chemist who analyzed this particular sample in question testifies that, at the time he analyzed it, the liquor was not roily. None of defendant's witnesses, except appellant, knew anything about the conditions under which the Golden Grain Juice sold by him was kept or sold, and none of them knew whether this particular purchase by the sheriff contained any alcohol at the time it was purchased, even if we assume that what the sheriff purchased was Golden Grain Juice, of which there is some doubt. But if the Golden Grain Juice was not kept under a certain temperature, it must, under the evidence, necessarily have contained alcohol.

It is contended by appellee, and we think it must be so, that, if the liquid in question was clear when it was sold and was clear when analyzed, it could not have fermented between the purchase and the analysis. It is not disputed that when it was analyzed it contained alcohol, so that it must have contained alcohol when purchased. If, as the testimony shows, Golden Grain Juice becomes cloudy when it begins to ferment, then, if the liquor purchased by the sheriff did not become cloudy from the time purchased until analyzed, it did not ferment during that time; so that the liquor purchased by the sheriff was either not Golden Grain Juice or there was alcohol in it when sold. The testimony of the defendant himself, which we have set out, tends quite strongly to show that he was selling near beer, and there are other circumstances in the evidence before set out, which we have not noticed in the discussion, which indicate that defendant was selling intoxicating liquors. There is some testimony that after Golden Grain Juice became fermented it would not be pal-

atable, but if it was sold as a beverage and contained alcohol, it would not be material whether it was actually used as a beverage or not. On the whole record, we are satisfied that the trial court properly granted a temporary injunction, and that such finding is sustained by the evidence.

3. We think that, under the circumstances shown, there should be a slight modification of the decree. As before shown, it reads that defendant is enjoined and restrained from selling and keeping for sale intoxicating liquors, including Golden Grain Juice. As said, we are not now concerned in the name of Golden Grain Juice, or any other name given to beverages. The question in each case is whether or not liquors, when not named in the statute as intoxicating liquors, are intoxicating, and what the proof is in each case. The decree in this case affects only the defendant. The decree seems to be broad enough to enjoin him from selling Golden Grain Juice, even though he should be able to show that sales of it, made subsequent to the decree, were not contrary to law. In other words, if he should be informed against as for contempt in the violation of this order, he might be precluded from showing that the liquor sold did not contain alcohol or was not intoxicating. Under the circumstances shown, that might depend upon conditions as to temperature, etc., or some shipments or kegs might contain alcohol, and others not. The decree should be modified to this extent, and should read that defendant is temporarily enjoined and restrained from selling and keeping for sale any intoxicating liquors, regardless of name.

3. INTOXICATING LIQUORS: injunction: improper form of decree.

As thus modified, the decree will stand affirmed, and the cause be remanded for an order or decree in harmony with this opinion; or either party may have a decree in this court. Appellant will pay the costs of the appeal.—*Modified and Affirmed.*

GAYNOR, C. J., EVANS and SALINGER, JJ., concur.