## YOUNG v. STATE.*
### DAVISON *v.* TOWN OF NEWTON.

(Division B.    Oct. 13, 1924.    On Suggestion of Error.    Dec. 15, 1924.)

[102 So. 161.    Nos. 24361, 24279.]

1. INTOXICATING LIQUORS.  *Possession of Jamaica ginger or essence of ginger, having recognized medicinal value and use, held not unlawful.*

   Jamaica ginger, or essence of ginger, put up in accordance with the United States Pharmacapœia, and having a recognized medicinal value and use, is not such an "intoxicating liquor" as is prohibited from being possessed by chapter 189, Laws of 1918, although, if drunk to excess, it may produce intoxication, and although, if sold as a beverage, the seller may be convicted of selling intoxicating liquors.

### ON SUGGESTION OF ERROR.

2. INTOXICATING LIQUORS.  *Possession and sale of proprietary remedies or patent medicines with alcoholic percentage indicated thereon not unlawful, although producing intoxication if drunk to excess; tincture of ginger or Jamaica ginger, prepared in accordance with United States pharmacopœia are not intoxicating liquors per se.*

   Section 2 of.chapter 189, Laws of 1918, does not prohibit the possession of proprietary remedies or patent medicines intended for use as such, and commonly used as such, although they contain alcohol in sufficient quantities to produce intoxication if drunk to excess, if the percentage of alcohol be indicated thereon as required by law; it being lawful to sell such preparations as medicines their possession cannot be unlawful *per se*. Consequently tincture of ginger or Jamaica ginger, prepared in accordance with the United States pharmacopœia does not constitute intoxicating liquors *per se*.

3. INTOXICATING LIQUORS.  *Mere possession of tincture of ginger or Jamaica ginger not unlawful, although sale as beverage unlawful.*

   If a person sells such preparation as a beverage, or with knowledge that they are to be used as beverages, he may be prosecuted for selling them under the laws of the state, but mere possession of them does not constitute an offense.

---

*Headnotes 1. Intoxicating Liquors, 33 C. J., section 198; 2. Intoxicating Liquors, 33 C. J., sections 222, 198, 2; 3. Intoxicating Liquors, 33 C. J., sections 198, 2.

APPEAL from circuit court of Newton county.

HON. G. E. WILSON, Judge.

R. G. Davison was convicted of the unlawful possession of intoxicating liquors, and he appeals. Reversed, and defendant discharged.

*Boggan, Leake & Boggan,* for appellant Young.

The record in this case shows that appellant is a licensed druggist, and at that time owned and operated a drug store in the Town of Verona, Lee county, Mississippi, and that this unopened bottle was under the prescription desk of appellant, in said drug store, in plain view, where it might be seen, and no effort was made to conceal it or prevent the search for and seizure made of the same. That the proof in this case shows that it was kept and used for a medical purpose only, and was not kept, or sold as a beverage. Par. 2, sec. 12, ch. 189 of the Laws of 1918, puts a licensed druggist among the excepted persons who are authorized to have, receive, and possess, grain or pure alcohol for medicinal, mechanical, and scientific purposes not contravening in any way the prohibition laws of this state. If this statute has been passed upon by our court we have been unable to find it, but the courts of other states in passing upon whether or not the prohibition laws have been violated have taken into consideration the business the person is engaged in, and the purpose for which it is kept, used or sold, and a distinction between an ordinary person selling drugs containing intoxicants to the trade generally, and a druggist who keeps such medicine and uses it for medicinal purposes only, is made. *King* v. *State*, 58 Miss. 737; *Bertrand* v. *State*, 73 Miss. 51, 18 So. 545; *Goode* v. *State*, 87 Miss. 495, 40 So. 12, 25 Kan. 751; 37 Am. St. Rep. 284; 4 A. L. R. 1158, note 2; *Estes* v. *State of Oklahoma*, 4 A. L. R. 1135, 1137 to 1166.

*F. S. Harmon,* Assistant Attorney-General, for the state.

The main point relied upon by appellant is that this liquor comes within the excepted classification as laid down in section 12 (2), chapter 189, Laws of 1918. This section provides that, ''Nothing in this act shall make it unlawful . . . (2) for any . . . licensed druggist . . . to have, receive and possess . . . grain or pure alcohol for any purpose now permitted by the laws of this state. . . .'' It is apparent from the most casual reading of this section that only ''grain or pure alcohol'' is here excepted. The intoxicating liquor here possessed by appellant comes within neither of these two excepted classifications, and therefore, since appellant himself admitted on the stand that this was jamaica ginger and contained alcohol, he cannot avail himself of the defense here set up.

The cases cited by appellant all arose in the pre-Volstead days, and deal largely with the question of what liquor is intoxicating. The defendant did not even here seek to prove that this liquor was non-intoxicating, and the state showed by its witnesses in a clear cut manner that same was intoxicating. Furthermore, these cases do not avail defendant because arising prior to the adoption of chapter 189, Laws of 1918.

Again appellant seeks a reversal of this cause because the search warrant and affidavit on which it was based were not introduced at the trial. It is sufficient answer to say that the defendant made no objection to nonintroduction of these documents, while the witnesses for the state swore that they were armed with a search warrant which was read to the defendant. But the conclusive answer lies in the fact that defendant testified in his own behalf and admitted possession of the liquor in question, thus bringing into play the doctrine of *Blowe* v. *State,* 130 Miss. 112.

*G. H. Banks,* for appellant.

Appellant seriously contends that there are several reasons why the judgment of the lower court should be reversed by this court. By reference to the record it will be noted that the following instructions were refused appellant. First, a peremptory instruction, and second, this instruction, "The court instructs the jury that if they believe defendant handled the Jamaica Ginger as a medicine and not as a beverage, and it was not used by any of his customers as a beverage, then it is your duty to find the defendant not guilty." *Bertrand* v. *State,* 73 Miss. 51; *King & Wall* v. *State,* 58 Miss. 737; *Goode* v. *State,* 87 Miss. 495.

*J. L. Byrd,* for appellee.

The appellant would have this court to believe that he was innocently in possession of a few bottles of this stuff through ignorance of the law, but the facts do not bear him out. The prosecution was based upon chapter 189, Laws of 1918, and this act specifically provides that it shall be unlawful for any person to have in his possession for any purpose any intoxicating liquor, the exact language of the statute being "for personal use or otherwise," unless he is a priest, physician, licensed druggist, or dentist, and these parties are entitled to possess alcohol only. Chapter 189, Laws of 1918. The appellant does not claim to fall within the exceptions mentioned in this statute, and it was his duty to prove that he did, if that was a fact.

The appellant complains of the refusal of an instruction to him which was on the question of the purpose for which he had this ginger. That was not in the case at all after he failed to introduce any proof showing him to be within one of the classes excepted by chapter 189, Laws of 1918, and the court was eminently correct in refusing the instruction.

*F. S. Harmon,* Assistant Attorney-General, for the state.

'This court is concerned solely with one legal question, namely, whether or not the legislative department of the government has expressed itself in language, sufficiently definite to warrant this court in holding that the possession of Jamaica ginger contravenes the statute prohibiting possession of intoxicating liquor. We, therefore, turn without further preliminary to a discussion of the statute here involved, confident that a study of same will convince this court that the possession of jamaica ginger in this state at this time is prohibited by statute. The conviction in this case was had under authority of section 2, chapter 189, Laws of 1918. As the court knows, this statute marks the culmination of many decades of legislation on the subject of prohibition, the course of legislation following an evolution in public sentiment, and finally crystallizing in an absolute and unequivocal prohibition against the possession of intoxicating liquor in this state and in the adoption of the Eighteenth Amendment to the National Constitution. Once the progressive character of our legislation on this subject is kept in mind, old cases decided at the beginning of the era lose much of their significance and the necessity of deciding this case in the light of the present legislative policy of the state is made apparent.

The attention of this court is called especially to the enumeration of the various kinds of prohibited liquors, which list closes with the final comprehensive expression "or other intoxicating liquors of any kind." If, therefore, we succeed in showing that Jamaica ginger is a liquor capable of producing intoxication, then the possession of same is prohibited by the statute unless it comes within the exception provided by section 12. It will be noted that only doctors, druggists, and other members of their fraternity come within the excepted class.

Similarly, the statute specifically says that only "grain or pure alcohol" may be possessed even by these persons. The ruling is too well settled to justify citation of authority that where the legislature lists persons or things in an excepted class, this list will be held to be complete and to exclude all other persons or things not included in such lists. Since, therefore, the appellant in this case is not a druggist or a physician, but is a groceryman, and since the liquor in this case is neither grain nor pure alcohol but is admittedly intoxicating, the conclusion seems inescapable that the statute has been violated and the conviction of the appellant was correct.

Chapter 189, Laws of 1918, forbids the mere possession of "intoxicants of any kind," and under any and all circumstances except those specifically enumerated in section 12, and since the appellant is neither a minister of the Gospel nor a druggist nor a physician, it is utterly impossible for him to bring himself within the excepted class. We repeat, therefore, that we have no quarrel with the cases cited. They simply came prior to the statute under which this indictment was brought. This decision, we submit, must be in the light of the statute, rather than on the authority of cases decided in a year when such a statute was hardly dreamed of.

Cases decided in other jurisdictions under similar statutes sustain our position. *Commonwealth* v. *Sookey,* 236 Mass. 448, 128 N. E. 788; *Darnell* v. *Castana Drug. Co.,* 188 N. W. (Iowa) 933; *State* v. *Intoxicating Liquors & Vessels,* 106 Atl. (Me.) 711.

*G. H. Banks,* reply for appellant.

In the very outset we wish to call the court's attention to the fact that the fatal defect in the reasoning of able opposing counsel is that they both set out on a false premise to begin with, and hence all their deductions are necessarily false. Their false premise is in classing

Jamaica ginger of the kind here involved as an intoxicating liquor *per se,* when a review of the statutes of this state clearly shows that it should not be so classed, but should be classed *per se* as a proprietary medicine.

In both briefs herein filed opposing counsel place special stress on the all "comprehensive expression" of the language used by the legislature in section 1, chapter 189, Laws of 1918, in describing the prohibited intoxicating liquors, and place special stress on the concluding language of the statute, "or other intoxicating liquors of any kind;" and argue as though the legislature had there for the first time used this language. When we examine chapter 103, Laws of 1916, which chapter is superseded by the chapter under consideration, we find the language used to describe the intoxicating liquors under consideration as follows, to-wit: "any spirituous, vinous, malted, fermented or other intoxicating liquors of any kind," which is identically the same descriptive language as the language used in the chapter under consideration.    Chapter 127, Laws of 1914; Chapter 115, Laws of 1908.

This brief review of the several statutes is made to show that the progress we have made is not to more fully or clearly define intoxicating liquors; but as clearly appears the progress made was first to limit and proscribe, and finally to prohibit the importation and transportation of intoxicating liquors in this state. Now in chapter 115, Laws of 1908, there was brought forward, with amendment section 1767, Code of 1906, which section as amended reads as follows, to-wit: "1767.    Sale of intoxicating proprietary or patent medicines. — The sale or giving away of any proprietary or patent medicine by whatsoever name called, which, if drunk to excess, will produce intoxication, shall be deemed and held to be a sale of intoxicating liquors, unless there shall be a printed label attached to each bottle or other receptacle containing the same, a facsimile

of a certificate issued by the Commissioner of Internal Revenue of the United States to the effect that such medicine has been examined by him or under his direction and that it does not contain such percentage of alcohol as to make the sale of same unlawful without an internal revenue license for the sale of liquors." This statute was not amended or repealed by the Acts of the Legislature of 1914, nor was it amended or repealed by the Acts of 1916. It was neither amended nor repealed by chapter 189, Laws of 1918, under which the town of Newton is proceeding with this prosecution; but it was brought forward in Hemingway's Code as section 2102 thereof, just as above quoted, and the legislature by chapter 286, Laws 1922, adopted said Code containing said section as "the official compilation of the statutes of the state of Mississippi;" and it is the law in this state today. Our legislature has in its wisdom fixed a clear and unmistakable line of demarcation between intoxicating liquors on the one side and proprietary or patent medicines on the other, and the decision of Division B of this court pronounces the law as now written as clear as a bell.

ETHRIDGE, J., delivered the opinion of the court.

The appellant was convicted of having intoxicating liquors in his possession exceeding one quart in quantity. The appellant was a merchant in the town of Newton, and ran a store in the limits of said town. The town marshal procured a warrant to search appellant's premises for intoxicating liquors, and went to the store of appellant and asked him if he had any whiskey, and Davison replied that he did not. The marshal then asked him if he had any "jake," meaning any Jamaica ginger or essence of ginger, and Davison told him that he did, and the marshal requested Davison to show what he had, and Davison produced a case with fifty-three

bottles in the case, stating to the marshal that that was all. The marshal, however, proceeded to search the store, and found other packages of Jamaica ginger or essence of ginger, which contained respectively ninety per cent. and ninety-three per cent. of alcohol, and which was put up in accordance with the standard of the United States Pharmacopœia. The quantity of this Jamaica ginger or essence of ginger exceeded one quart.

The evidence does not show that appellant sold these preparations as beverages. There is evidence of the number of empty bottles in store, from which it might be inferred that such beverages had been drank or used in the store; but appellant testified that he did not sell the Jamaica ginger or essence of ginger as a beverage, but as medicine. He made no denial of the fact that he kept and sold the same as medicine. The evidence showed that Jamaica ginger or essence of ginger, if drank to excess, will produce intoxication; it also shows that the plaintiff made inquiry of prohibition agents or officers representing the United States government as to whether the selling of this preparation would violate the United States prohibition laws, and was informed that it would not. The question presented is: Does the keeping of Jamaica ginger or essence of ginger come within the meaning and purport of the statute prohibiting the keeping of intoxicating liquor in possession in this state?

This court has dealt with the sales of Jamaica ginger, and has held the sale lawful where it was sold as a medicine, but unlawful and in violation of the liquor laws of the state if sold as a beverage. In *Bertrand* v. *State,* 73 Miss. 51, 18 So. 545, the court held that the test of criminality in the sale of such preparation is whether the tincture or essence containing alcohol was a medicine, and sold as such in good faith, and not as a beverage, or whether it was a sham preparation, disguised as a medicine, but really an intoxicating liquor, and sold as

a beverage. To like effect was *King et al.* v. *State,* 58 Miss. 737, 38 Am. Rep. 344. *In Goode* v. *State,* 87 Miss. 495, 40 So. 12, in which the above cases were cited, the court held that the sale of a decoction, intended primarily as a medicine, although it will produce intoxication when drunk to excess, is not a violation of the statute prohibiting the sale of intoxicating liquors, unless it were sold as a beverage, and not as a medicine. Judge TRULY, speaking for the court in this last case, held that three things must appear from the evidence to the satisfaction of the jury before they are warranted in convicting for the sale of these preparations as liquor: First, that the defendant sold the article; second, that the compound was intoxicating; and, third, that it was sold by the defendant as a spirituous beverage, and not as a medicine.

We do not think it violates the statutes of this state to have possession of Jamaica ginger. It is a standard preparation, and has medicinal value and use. Consequently the judgment of the court below is erroneous, and the judgment will be reversed, and the defendant discharged.

*Reversed and defendant discharged.*

ON SUGGESTION OF ERROR.

PER CURIAM.—On October 6, 1924, the case of *Young* v. *State,* No. 24361, in which the appellant was charged with having in his possession intoxicating liquor, to-wit, Jamaica ginger, was affirmed without an opinion by division A. On the following Monday the case of *Davison* v. *Town of Newton,* No. 24279, in which appellant was charged with having in his possession intoxicating liquor, to-wit, Jamaica ginger, and convicted thereof, was reversed and dismissed.

The evidence in each case showed that the defendant had Jamaica ginger in his possession at the time the

respective searches were made and for which prosecutions were instituted and convictions secured on the evidence obtained thereby.

.Suggestions of error were filed in each case and each case submitted to the court *in banc* on suggestion of error, and briefs were called for and the cases were elaborately briefed by counsel and fully considered by the court. The proof in each case showed that the Jamaica ginger was put up in accordance with the United States Pharmacopœia, and contained ninety-three per cent. alcohol.

The question presented involves a question as to whether or not section 2, chapter 189, Laws of 1918, covers medicinal and household preparations containing alcohol in sufficient quantities to produce intoxication, but prepared and generally used for medicinal and household purposes, and whether such preparations are intoxicating liquors within the meaning and purview of the statute.

Sections 1 and 2, chapter 189, Laws of 1918, read as follows:

"Section 1. That it shall be unlawful for any railroad company, express company or any common carrier, or any officer, agent or employee of any of them, or any other person, to ship or to transport into, or to deliver into this state in any manner, or by any means whatsoever, any spirituous, vinous, malted, fermented, or other intoxicating liquors of any kind whether intended for personal use or otherwise, or whether in the original package or otherwise, from any point without this state to any point within this state, or from place to place within this state, to any person, firm or corporation within this state, save as provided in section 12 of this act.

"Sec. 2. That it shall be unlawful for any person, firm or corporation to receive or accept, directly or indirectly, from any of the common carriers, companies or persons mentioned in section 1 of this act, or to have, control or

possess in this state or for any person to personally transport or bring into this state or from place to place in this state, any of the liquors mentioned in section 1 of this act, whether intended for personal use or otherwise, or whether in the original package or otherwise, save as provided in section 12 of this act.''

By section 5 of the said act it is provided:

''That no property rights of any kind shall exist in the liquors mentioned in section 1 of this act, or in any other liquors, liquids, bitters or drinks prohibited by the laws of this state to be manufactured, sold, bartered, or otherwise disposed of in this state,'' etc.

Section 12 of the said act provides certain exceptions. The pertinent part here is paragraph 2 of said section, which reads as follows:

''For any practicing physician, who is the sole proprietor of a drug store, any licensed druggist, wholesale druggist, pharmacist, manufacturer, college, medical or pharmaceutical college, public or charity hospital or state institution or chemists or bacteriologists, to order, purchase and have shipped and delivered, or to have, receive and possess, nor for any common carrier to transport, ship and deliver to any of said persons, firms, corporations or institutions grain or pure alcohol for any purpose now permitted by the laws of the state, to any such person, college, hospital, or institution, and to be used only for medicinal, mechanical, and scientific purposes not contravening in any way the prohibition laws of this state. Nor for any dentist to order, purchase, nor for any dentist to have, control, receive and possess alcohol as is now provided in the case of a physician, by the laws of this state, and by chapter 113, Laws of 1908.''

Section 18, chapter 189, Laws of 1918, provides:

''That any person, firm or corporation, who shall, within this state, make, manufacture or distill any spirituous, vinous, malted, fermented, or other intoxi-

cating liquors of any kind, shall be guilty of a felony, and upon conviction, shall be punished by imprisonment in the penitentiary for not more than three years, provided nothing in this section shall be construed to prohibit the making of home-made wine for domestic and household purposes only."

Section 21, chapter 189, Laws of 1918, provides:

"That this is a supplemental act and does not·constitute a complete revision of the laws upon the subject-matter involved, and that all acts and parts of acts, and all laws and parts of laws heretofore passed, are hereby repealed and modified only when the same are in conflict with the provisions of this act," etc.

Prior to 1908 the law only prohibited the sale of intoxicating liquors as a beverage when a license had not been procured for that purpose.

By section 1746, Code of 1906 (Hemingway's Code, § 2086), it was provided:

"If any person shall—

"(a) Sell or barter, or give away to induce trade, or keep for sale or barter, or to be given away to induce trade, any vinous, alcoholic, malt, intoxicating, or spirituous liquors, or intoxicating bitters, or other drinks, which if drank to excess will produce intoxication, in any quantity less than one gallon, without having a license therefor in pursuance of this chapter; or

"(b) Shall, without having first paid the privilege tax and obtained the tax license, sell or barter, or give away to induce trade, or keep for sale or barter, or to be given away to induce trade, any such liquors, bitters or drinks in the quantity of one gallon or in a greater quantity, such person, and all others who may have owned or had any interest at the time in the liquors, bitters or drinks sold or bartered, or given away to induce trade, or kept for sale or barter, or to be given away to induce trade, contrary to law, shall, on conviction, be fined," etc.

It was further provided in the said chapter that there should be no property in intoxicating liquors kept or offered for sale in violation of law or any vessel or appliance used in connection therewith.

By chapter 115, Laws of 1908, restricting the sale and use of intoxicating liquors, a description of liquors thereby prohibited from being sold within the state is "any vinous, alcoholic, malt, intoxicating, or spirituous liquors, or intoxicating bitters, or other drinks, which if drank to excess will produce intoxication." By said act of 1908 the sale of intoxicating proprietary or patent medicines were dealt with in the following language:

"The sale or giving away of any proprietary or patent medicine by whatsoever name called, which, if drunk to excess, will produce intoxication, shall be deemed and held to be a sale of intoxicating liquors, unless there shall be a printed label attached to each bottle or other receptacle containing the same, a facsimile of a certificate issued by the Commissioner of Internal Revenue of the United States to the effect that such medicine has been examined by him or under his direction and that it does not contain such percentage of alcohol as to make the sale of same unlawful without an internal revenue license for the sale of liquors."

By chapter 127, Laws of 1914, it is made unlawful for any person, firm, or corporation to ship, carry, transport, or convey any intoxicating liquor into this state, or from one point to another within this state, for the purpose of delivery, or to deliver the same to any person, firm, company, or corporation within the state, except as therein provided. By section 3 of this act intoxicating liquors are defined as follows:

"That the term "intoxicating liquors" used in the preceding sections shall be deemed to cover and include and shall cover and include, all liquors, spirituous, vinous or malt, containing more than one-half of one per

cent. alcohol, and which are used, or intended to be used, as a beverage.''

It will be seen from these statutes that the definition or description of liquor prohibited from being sold or given away to induce trade in the former statutes is the same as the description of liquor now being prohibited from being possessed, and the question arises as to whether the statutes intend to prohibit the sale, manufacture, and possession of such articles as proprietary medicines, flavoring extracts, perfumes, colognes, bay rum, shoe polish, and other articles containing a considerable percentage of alcohol.

In *King* v. *State,* 58 Miss. 737, 38 Am. Rep. 344, appellants were indicted for unlawfully selling vinous and spirituous liquors in less quantities than one gallon. The evidence showed that the defendants sold, in quantities of from a pint to a quart, a compound called ''home bitters,'' which the defendants claimed was a proprietary medicine, which, though containing alcohol, it was lawful for them to sell without obtaining a license to retail. The evidence introduced by the defendants themselves showed that the compound sold contained thirty per cent. of alcohol, and that the other ingredients were water and various barks, and the peelings and seed of trees, fruit and herbs. The court instructed the jury that, if the compound were intoxicating, and was sold by the defendants as a spirituous beverage, and not as a medicine, they ought to find the defendants guilty. This instruction was excepted to. The court said:

''One authorized to sell medicines ought not to be held guilty of violating the laws relative to retailing, because the purchaser of a medicine containing alcohol misuses it and becomes intoxicated; but, on the other hand, these laws cannot be evaded by selling as a beverage intoxicating liquors containing drugs; barks, or seeds which have medicinal qualities. The uses to which the compound is ordinarily put, the purposes for which it is usually

bought, and its effect upon the system, are material facts from which may be inferred the intention of the seller. If the other ingredients are medicinal and the alcohol is used either as a necessary preservative or vehicle for them—if from all the facts and circumstances it appears that the sale is of the other ingredients as a medicine, and not of the liquor as a beverage—the seller is protected.''

In *Bertrand* v. *State,* 73 Miss. 51, 18 So. 545, the appellant was indicted for selling intoxicating liquors without a license. On the trial it was shown by the state's witness that the appellant sold him tincture of ginger; that he bought it to drink when diluted; that it was purchased from appellant at his drug store for its intoxicating effects, but that nothing was said about his purpose in buying it; that he could not drink it in its condition at the time of purchase, and, in order to do so, had to dilute it by adding two parts of water to one of the tincture; and that, so diluted, he drank it, and it was intoxicating. The appellant testified in that case that the tincture of ginger is used by all physicians when prepared under the formulæ of the United States Dispensatory; that the tincture of ginger in question was so prepared, and could not be used as an intoxicant without danger of serious injury to the person drinking it. In that case the court held that the test was whether the essence or tincture of ginger in this case was a medicine, sold by appellant in good faith, and not as a beverage, or whether it was a sham preparation, disguised as medicine, really an intoxicating liquor, sold as a beverage. If the former, appellant should have been acquitted; if the latter, convicted, and quoted with approval the above quotation from *King* v. *State.*

In *Goode* v. *State,* 87 Miss. 495, 40 So. 12, the court again had under consideration the question of the sale of such liquor, and also quoted from *King & Wall* v. *State.* It further laid down the test of a sale in the following language.

"If three things appear from the evidence to the satisfaction of the jury they should convict: (1) That the defendant sold the article; (2) that the compound was intoxicating; and (3) that it was sold by the defendant as a spirituous beverage, and not as a medicine. But all three of these elements of guilt must be proven in order to sustain a conviction, where the compound is intended primarily as a medicine. It is not enough that the sale should have been made by the defendant, and that the compound, if drunk to an excess, would be intoxicating; the evidence must go further and show from the attendant circumstances of the sale, the conduct and demeanor of the parties, and all other things shedding light upon the transaction, that the sale was made by the defendant, not as a medicine, but as a beverage."

In *Intoxicating Liquor Cases,* 25 Kan. 751, 762, 37 Am. Rep. 284, the supreme court of Kansas considered the question under a similar statute in that state. The opinion was delivered by Justice BREWER, afterwards an associate justice of the supreme court of the United States. The court reached the conclusion that the statute did not intend to include medicines and toilet articles and preparations for domestic use not intended as a beverage. At page 288 of the American Report of this case the court used the following language:

"We pass now to the second branch of these cases, the inquiry as to the scope and extent of the statute. What liquors, using that term in its broadest sense, are included? The first section prohibits the manufacture or sale of any spirituous, malt, vinous, fermented, or other intoxicating liquors. Now this language is broad and comprehensive. 'Other intoxicating liquors' extends the scope so as to include every liquor which comes within the general definition of intoxicating liquor. And yet, if this section stood alone, there would be little doubt as to its meaning. It would include only such liquors as

are used as a beverage. No one would think of extending it to cologne, extract of lemon, or any of those many preparations which, although they contain alcohol, the intoxicating factor in all drinks, are never used as beverages. But section 10 casts the doubt upon the statute. It reads: 'All liquors mentioned in section 1 of this act, and all other liquors or mixtures thereof, by whatever name called, that will produce intoxication, shall be considered and held to be intoxicating liquors within the meaning of this act.' This section, whose language is unfortunately chosen, is the one which has provoked this litigation, and has tended to create so much prejudice against the statute; for its letter reaches to preparations which no man can believe were within the intent of the legislature, and any interference with whose sale, if within the power of the legislature, would be felt by every one to be unnecessary and unreasonable. Alcohol is the intoxicating principle, the basis of all intoxicating drinks. Whatever contains alcohol will, if a sufficient quantity be taken, produce intoxication. Hence whatever liquor contains alcohol is within the statute. So reads its letter. But when we come to inquire as to the liquors which contain alcohol, we find a lengthy list of fluids which are never used as beverages. Cologne, extract of lemon, bay rum, paregoric, tincture of gentian, and many other medicinal preparations contain alcohol, and all will produce intoxication. They are seldom used as a beverage, and yet they may be. Intoxication produced by drinking bay rum has been known, yet few will drink it. Its uses are for the toilet. But three of the cases before us are prosecutions for the sale of bay rum, essence of lemon, and tincture of gentian, respectively. These preparations contain alcohol, and will each, it is charged, produce intoxication. If the statute includes such articles, many of them are absolutely and wholly shut out from sale. The excepted purposes in the statute are 'medical, scientific, and me-

chanical.' But toilet and culinary purposes are strictly included within no one of the three. The lady who desires cologne for her toilet purposes cannot get a physician's prescription therefor, nor file an affidavit that she wants it for scientific or mechanical purposes, and yet only in these ways does the act provide for sales. Did the legislature intend interference with such articles? And if not, what is the proper construction to be given to the language in said section 10? We have had occasion to notice heretofore the cardinal canon of construction, which is that the intent when ascertained governs, and to that all mere rules of interpretation are subordinate. State v. Bancroft, 22 Kan. 205. The letter does not always express the intent. 'A thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter; and a thing which is within the letter of the statute is not within the statute unless it be within the intention of the makers; and such construction ought to be put upon it as does not suffer it to be eluded.' Holmes v. Carley, 31 N. Y. 290.''

In a case note to Estes v. Oklahoma, 4 A. L. R. 1163, under the subtitle of ''Purpose of Sale,'' other authorities are set out.

It appears that the great weight of authority holds in accordance with the announcement of our court in the above cases. There are a few courts which hold that anything that will produce intoxication is prohibited under their peculiar statues.

In our view, after a thorough consideration of the question, the legislature did not intend by chapter 189, Laws' of 1918, to prohibit the manufacture, sale, or possession of medicines manufactured and sold and kept as such. If it is lawful to sell such preparations as a medicine or to manufacture the same as medicine and to use same as medicine, then the mere possession of such articles could not constitute an offense. It would

be impossible to conceive of the lawful manufacture, sale, or possession of an article if its possession is unlawful and prohibited. What the legislature was dealing with were alcoholic beverages. The language used by the legislature as above stated is almost, precisely the same language used since the Code of 1906. If it should now be held that Jamaica ginger prepared in accordance with the United States Pharmacopœia is an intoxicating liquor *per se*, it would result in making every person who had manufactured drugs containing enough alcohol to intoxicate a felon. It would make every person who sold it guilty of selling intoxicating liquors, and it would make every person who had these medicines in his house or possession guilty of a misdemeanor. We cannot believe that the legislature intended so drastic a situation. The evils intended to be prevented were the evils of intoxication. If a person sells a medicine as a beverage he may be punished for so doing, but, as long as it is lawful to sell a medicine, it cannot be a crime to have possession of it.

It is due the court to say that the question has been very much more fully argued on the suggestions of error than on the original hearings. Our conclusion leads to sustaining the suggestion of error in the case of *Young* v. *State,* and overruling the suggestion of error in the case of *Davison* v. *Town of Newton.*

*Reversed and defendant discharged.*

ANDERSON, J. (dissenting).

I dissent from the majority opinion. The principles therein declared to be the law in my judgment open the flood gates to a saturnalia of violations of our prohibition laws. They are hard enough to enforce as it is. with additional subterfuges and frauds for the would-be law violator to hide behind it is hard to tell what the result will be.

In my opinion, as the prohibition laws now stand, they bear no such construction as given them by the majority opinion. On the contrary, it seems plain that all intoxicating liquors and drinks are outlawed except wine for sacramental purposes, homemade wine for domestic purposes, denatured alcohol, and pure grain alcohol possessed and used for the purposes set out in Section 12 of the Act.

Chapter 189, Laws of 1918 (Hemingway's Code Supplement 1921, sections 2163a to 2163w, inclusive), in sections 1, 2, and 3 thereof, prohibit, among other things, the transportation, control, possession, and purchase of "any spirituous, vinous, malted, fermented, or other intoxicating liquors of any kind." Surely that language is broad enough to include Jamaica ginger, ninety per cent. alcohol, which, of course, is intoxicating and capable of and is used as a beverage to a large extent. The majority opinion seems to concede that, but holds that the legislature did not intend to include Jamaica ginger and other intoxicating liquors prepared, kept, and sold in good faith as a medicine.

Sections 1, 2, and 3 of the act above referred to each concludes with this language: "Save as provided in section 12 of this act." Clearly it seems to me by that language every kind and character of intoxicating beverage is outlawed except those mentioned in section 12 of the act. Turning to section 12 we find the following catalogue of exceptions: Wine for sacramental purposes, grain or pure alcohol to be used only for medicinal, mechanical, and scientific purposes by physicians who are proprietors of drug stores, licensed druggists, wholesale druggists, pharmacists, manufacturers, medical or pharmaceutical colleges, public or charity hospitals, state institutions, chemists, bacteriologists, homemade wine for domestic purposes, and denatured alcohol. Nowhere in the exceptions is there language which expressly or by implication covers an intoxicating liquor like Jamaica

ginger which is capable of and is being used as a beverage. It seems plain enough therefore, that sections 1, 2, and 3 of the act are broad enough to include Jamaica ginger, and that section 12 containing the exceptions is not broad enough to exclude it from the operation of those sections.

The majority opinion is based on the holding of this court in *King* v. *State,* 58 Miss. 737, 38 Am. Rep. 344; *Bertrand* v. *State,* 73 Miss. 51, 18 So. 545; *Goode* v. *State,* 87 Miss. 495, 40 So. 12, and two or three cases from other states. Our court held in those cases that it was not violative of the liquor laws, as they then stood to sell an intoxicating drink in good faith as a medicine which had been compounded and was in use as such. When the last of those cases, *Goode* v. *State,* was decided, which was in 1906, the chapter on intoxicating liquors in the Code of 1906 was the law of this state. We had had for many years local option. By complying with the law intoxicating liquors could be legally sold in the state. It was not against the law when any of those cases was decided to purchase, own, possess, and transport intoxicating liquors in any quantity whatever. Under the conditions as they then existed our court held that the legislature did not intend to prohibit the sale in good faith as a medicine that which had been compounded and intended as such, although it was intoxicating and capable of and was being used as a beverage. By chapter 115, Laws of 1908, which is known as the state-wide Prohibition Act, the entire policy of the state was changed. Running all through that act and all subsequent legislation on the subject is the purpose not only to outlaw vinous and spirituous liquors but any and all substitutes therefor, regardless of name and character, provided they are intoxicating and capable of and are used as beverages.

137 Miss.—14.

The majority opinion lays stress on what it states as the definition of intoxicating liquors as given in section 3, chapter 127, Laws of 1914. In the first place our view is that that definition does not help the majority opinion. The definition concludes with this language: "Containing more than one-half of one per cent. alcohol, and which are used, or intended to be used, as a beverage." It will be noted that the definition does not use the conjunctive "and" but the disjunctive "or." ·Therefore, regardless of the purpose of the keeping or sale of the particular liquor in question, if it contains more than one-half of one per cent. of alcohol, such keeping or sale would be unlawful whether it was intended to be used or was actually used as a beverage.

However, the majority opinion overlooked the fact that chapter 127, Laws of 1914, is expressly repealed by section 31, chapter 103, Laws of 1916.

I am requested by the Chief Justice to say that he concurs in this opinion.