McConnon & Co. v. Meadows.*

(Division A.    March 2, 1925.)

[103 So. 7.    No. 24655.]

1. Guaranty. *Indictment charging debtor with sale of liquor held inadmissible in creditor's action against guarantor.*
    In action on guaranty, defended on ground that debt guaranteed was incurred in sale of intoxicating liquor within Code 1906, section 1743 (Hemingway's Code, section 2085), making debt so contracted nonenforceable, indictment returned against debtor for sale of intoxicating liquor *held* not admissible.

2. Intoxicating Liquors. *Manufacturer's sale of products containing alcohol for resale for medicinal and household purposes held not sale of "intoxicating liquor."*
    Manufacturer's sale, in good faith, of proprietary medicines, extracts, and toilet products containing alcohol, to be resold by buyer for medicinal and household purposes, *held* not a sale of "intoxicating liquor," in violation of Laws 1918, chapter 189, within Code 1906, section 1743 (Hemingway's Code, section 2085), making debt incurred in sale of "intoxicating liquor" nonenforceable, though buyer, without manufacturer's knowledge, sold such medicines, extracts, and toilet products for beverage purposes.

*Headnotes 1.    Guaranty, 28 C. J., Section 198; 2. Intoxicating Liquors, 33 C. J., Section 354 (1926 Anno).

Appeal from circuit court of Simpson county.

Hon. W. L. Cranford, Judge.

Action by McConnon & Co. against J. W. Meadows. Judgment for defendant, and plaintiff appeals. Reversed and judgment rendered.

*A. M. Edwards,* for appellant.

The first assignment of errors is, that the court erred in granting peremptory instruction for the defendant in this case. The plaintiff contended that the flavoring extract and medicine containing alcohol sold by it to the said Drummonds could not be used for beverage purposes and that they were unfit for such purposes and the plaintiff produced strong evidence to that effect, and the defendant sought to controvert this evidence by testimony that certain flavoring extracts sold to the said Drummonds had been used for intoxicating purposes and had caused intoxication.

It will be noted that in the application of the Prohibition Acts, preparations containing alcohol may be properly divided into three classes, as follows: First, those preparations which by reputation and ordinary use as intoxicating liquors, such as brandy, whiskey, rum, beer, wine, etc. Second, those which by general reputation and use although containing alcohol are not intoxicating liquors in that they have been for years manufactured and dealt in for legitimate food and medicinal purposes such as patented, patent and proprietary medicines, and household culinary flavoring extracts. Third, those preparations which contain alcohol which are described and sold under names and directions indicating medicinal, scientific or industrial use and purposes but which are on the borderline between the two classes above mentioned, such as medicated wines, tonics, containing alcohol, seeds, herbs, barks, etc., and bitters containing intoxicating liquors and other ingredients.

We submit that plaintiff's preparations come within the second class above mentioned and they are generally by the courts held not to be intoxicating liquors but man-

ufactured and sold for the purpose for which they are intended, it making no difference whether or not they contain more than the maximum amount of alcohol usually named in Prohibition Acts. *Intoxicating Liquor Cases,* 25 Kan. 751, 37 Am. Rep. 284; *United States* v. *Stubblefield,* 40 Fed. 454.

The excessive and immoderate use of any preparation in which alcohol is used in sufficient quantities to preserve the other ingredients may intoxicate; but the mixture does not fall under the ban of the statute because spirituous liquor is present. *Carl* v. *State,* 87 Ala. 17, 6 So. 118; *Bradley* v. *State,* 121 Ga. 201, 48 S. E. 981; *Roberts* v. *State,* 4 Ga. App. 207, 60 S. E. 1082.

The supreme court of the state of Mississippi has laid down a rule with respect to what preparations are prohibited and what are not as intoxicating liquors. *King* v. *State,* 58 Miss. 737, 38 Am. Rep. 344; *Bertrand* v. *State,* 73 Miss. 51, 18 So. 545; *Goode* v. *State,* 87 Miss. 195, 40 So. 12; *Russell* v. *Sloan,* 33 Vt. 656; *State* v. *Keser,* 74 Vt. 50, 52 Atl. 116; *State* v. *Krimski,* 78 Vt. 162, 52 Atl. 37; *Holcomb* v. *People,* 49 Ill. App. 73; *Commonwealth* v. *Sookey,* 236 Mass. 448, 128 N. E. 788, 11 A. L. R. 1230; *Schemmer* v. *State* (Neb.), 180 N. W. 581.

Because some pervert has the craving or desire to drink a flavoring extract for beverage purposes in spite of its unsuitability for that use it cannot be said that a flavoring extract is potable as a beverage, nor was it the intention of the legislature to deprive the housewife of the ordinary flavoring extracts because of the fact that persons of perverted tastes and desires sometimes resort to them for alcoholic stimulation.

A harmless preparation of general use for toilet or household purposes and sold by merchants does not become an intoxicating beverage because used occasionally as such. *Commonwealth* v. *Lanides,* 239 Mass. 103, 131 N. E. 302. In the following cases the evidence was held insufficient to prove that the goods in question were intoxicating liquors. *Crafton* v. *State* (Ark.), 240 S. W. 11;

*Norwood* v. *State,* 80 Fla. 613, 86 So. 506; *Parchman* v. *State,* 127 Miss. 8; *State* v. *Morrison* (Mo.), 240 S. W. 822; *State* v. *Weagley* (Mo.), 240 S. W. 822; *Blue* v. *State,* 205 Okla. App. 74.

We submit that the sale of the goods in question which are the basis of the suit in question namely, extracts, flavorings, etc., and other similar medicinal preparations when sold strictly for medicine and household uses and not as a beverage as was shown in this case at bar are not condemned by our prohibition laws. The test, however, is whether or not such preparation was sold in good faith as a medicine or flavoring extracts to be used for legitimate purposes. The question of good faith here is one for the determination of the jury trying the case and in passing upon this question they may take into consideration the facts and circumstances surrounding the sale, the party to whom the sale was made, and the amount sold, etc. The foregoing rules are clearly stated in the following adjudicated cases: *Bertrand* v. *State, supra; Goode* v. *State, supra; Payne* v. *State,* 125 Miss. 896, 88 So. 483.

*J. P. Edwards,* for appellee.

If the liquid or extract was intoxicating as testified to by defendant's witnesses then it is condemned by section 2102 and section 2085. This court held in Elkin-Henson Grain Co. v. White, 98 So. 531, that a note even in the hands of an innocent purchaser was void where the consideration of the note was for intoxicating liquor.

It is contended by plaintiff, appellant here, that the contract sued on is valid for the reason that such sales are not prohibited by the Federal Statutes, but that under the Volstead Act such sales are authorized. In answer to this we say that even if this were true, as to such sales being legal under the Federal Statutes, this would not legalize such sales under the laws of Mississippi.

We submit that as the account guaranteed by defendant, Meadows, was an entire contract and guaranteed payment of an account partly illegal it is void. *Cotton* v. *McKenzie,* 57 Miss. 418.

McGowen, J., delivered the opinion of the court.

McConnon & Co., appellant here, a corporation chartered under the laws of Minnesota, domiciled at Winona, Minn., filed its declaration in the circuit court upon a contract of guaranty executed by J. W. Meadows, whereby the said Meadows guaranteed the payment of any indebtedness incurred by Carl Drummonds amounting to four hundred thirteen dollars and sixty-two cents. To this declaration the defendant entered his appearance and filed a plea of the general issue and notice under said plea of special matter, of which we quote only the following:

"Plaintiff will also take notice that defendant will offer evidence to show on the trial of this case that most of the goods sold by plaintiff to the defendant, and for which the so-called guaranty was signed by defendant, were intoxicating beverages, and therefore offered for sale and sold in violation of the laws of the state of Mississippi, and therefore the contract, so called a guaranty, made by this defendant for payment of same was void and no recovery can be had on same; that there were goods far in excess of the amount sued for under the contract with the said Carl Drummonds and alleged to have been guaranteed as to payment for same by defendant, that were intoxicating and sold as a beverage to the said Drummonds, and that more has been paid on same than due for goods that were nonintoxicating, and said contract is therefore null and void.

"Also will offer evidence to prove that said guaranty was void for want of consideration, and in violation of the criminal statutes of the state of Mississippi and of the laws of each and every state in the United States."

It will be seen from this plea that the defendant's defense in the light of the proof was based upon section 1743, Code of 1906 (Hemingway's Code, section 2085), which is as follows:

"If any person shall trust or give credit to another for intoxicating liquor sold, he shall lose the debt, and be forever disabled from recovering the same or any part thereof; and all notes or securities given therefor, under whatever pretense, shall be void."

The items of the account show that the plaintiff sold the debtor, Drummonds, peddler's merchandise consisting of proprietary medicines, extracts, toilet articles, and merchandise of that character. It appears from the proof that Drummonds sold these articles through the country from house to house, keeping some of them in storage from which they were sold, and that he had a license to vend goods as a peddler. The plaintiff showed the correctness of the account sued on, the goods being shipped upon written orders for each separate shipment signed by Carl Drummonds, showing delivery of each shipment to the carrier.

Upon the question of the extracts and liniment being intoxicating the president, vice president, and manufacing chemist of the corporation were examined at great length, the effect of their testimony being that their products were manufactured and sold as extracts for the use of housewives and proprietary medicines manufactured and sold for medicinal purposes. They testified with great candor and frankness that they used quantities of alcohol and that the alcohol used was one of the most expensive items of their business and only such quantities were used in their preparations as were necessary to produce a first-class article. Their proof further showed that the extracts contained alcohol because that ingredient was necessary to the preservation and maintenance of the strength of the several flavors. Lemon extract contained about eighty per cent. alcohol while other ingredients contained as low as eleven per cent. As

to the medicine manufactured, red liniment contained about the highest percentage of alcohol, being thirty-eight per cent.

They testified that they had no knowledge of the retailing of any of these goods by Drummonds and an examination of the itemized statements shows that proportionately there was nothing in his orders for extracts and medicines which would arouse suspicion that the extracts and medicines were being sold for beverage purposes. They further testified that none of their products were adapted for use as beverages, that the oils and other ingredients would make a person sick before it would produce intoxication.

The druggist at Mendenhall corroborated the statements that alcohol was a necessity in the preservation of lemon extract and the manufacture of certain medicines, and that lemon extract required a greater percentage of alcohol than others.

The defendant's testimony was generally to the effect, by six or more witnesses, that they drank the lemon extract for the "kick"; that it made them drunk; did not make them sick. One of the witnesses testified that he found some lemon extract labeled "McConnon" in his wife's cupboard, felt bad, drank some of it, and later bought several bottles from Drummonds in order to get the effect.

We also note that all these witnesses for the defendant swore that Drummonds did not know that they were purchasing the articles for use as a beverage. An indictment against Drummonds charging him with the unlawful sale of intoxicating liquors was offered in evidence and permitted to go to the jury over plaintiff's objection. At the conclusion of the testimony both plaintiff and defendant asked for a peremptory instruction, and the court granted the peremptory instruction for the defendant, and judgment for the defendant against the plaintiff was accordingly entered.

Of course, it was error to permit the indictment presented by the grand jury against Drummonds to be offered in evidence against the plaintiff on this issue, but we shall content ourselves with this statement as that error becomes immaterial in view of the conclusion we have reached in this case.

The lower court evidently construed the sale of these medicines and flavoring extracts by McConnon & Co. to Drummonds and the debt incurred thereby to be void because they contained alcohol, and had, in the cases of the witnesses presented, produced intoxication.

At the time this case was tried in the lower court, our court had not definitely passed upon the right to sell or possess Jamaica ginger and other such preparations. Recently, however, a majority of the court in the cases of *W. F. Young* v. *State* and *R. G. Davison* v. *Town of Newton,* 102 So. 161, went fully into the question whether or not the possession of Jamaica ginger was a violation of our prohibition laws. The various statutes and decisions in our own state were examined and reviewed, as well as authorities elsewhere, and the conclusion reached as to proprietary medicines, flavoring extracts, perfumes, colognes, shoe polish, and other articles containing a considerable percentage of alcohol, that it was not a violation of our prohibition statutes to have in possession or sell Jamaica ginger and like medicines in good faith not kept and sold as a beverage; that the legislature did not intend, by chapter 189, Laws of 1918, to prohibit the manufacture, sale, or possession of the articles enumerated, sold, and kept in good faith as such; the manufacture and sale of a medicine being lawful, that the mere possession of such articles could not constitute an offense. In other words, under the cases, *supra,* it might be that Drummonds could be held to have sold these articles as a beverage and thereby be guilty of violating our prohibition laws, while a dealer who sells to him the same medicines or extracts in good faith would not be guilty and would not be liable to suffer the penalty imposed by section 2085.

On the authority of the *Young and Davison cases, supra,* we think the debt contracted here under the facts of this case was not a debt for intoxicating liquors within the purview of our statutes, while the writer of this opinion does not share the view announced as to the possession of Jamaica ginger.

There was no testimony that McConnon & Co. sold the articles denounced as intoxicating as a beverage, or that they knew or had any reason to believe that Drummonds, who purchased from him, was selling as a beverage; and, applying the above case, it would mean that every druggist who bought flavoring extracts or medicines containing any large percentage of alcohol would be able to defeat the entire debt thereby created by showing that customers had become intoxicated upon the medicines or extracts not manufactured or intended to be sold as a beverage, and yet the retailer, who sold the articles direct to the consumer, would not in a criminal manner violate our prohibition statutes.

It follows from these statements that we are of the opinion that the court below should have granted a peremptory instruction for the plaintiff for the amount sued for, four hundred thirteen dollars and sixty-two cents with lawful interest.

The cause will be reversed and judgment will be entered here accordingly.

*Reversed and judgment rendered.*