[Crim. No. 1841. Second Appellate District, Division Two.—September 23, 1929.]

THE PEOPLE, Appellant, v. DAN COSTELLO, Respondent.

U. S. Webb, Attorney-General, and John L. Flynn, Deputy Attorney-General, for Appellant.

P. N. McCloskey and H. R. Griffin for Respondent.

THOMPSON (IRA F.), J.—The defendant was charged in an information containing two counts with the offenses of "selling intoxicating liquor" and with "maintaining a common nuisance, towit: a certain building in the town of Victorville, in the County of San Bernardino, State of California, in which intoxicating liquors were wrongfully kept and unlawfully sold." The jury found the defendant not guilty of count one charging him with the sale of intoxicating liquors in violation of the Wright Act (Stats. 1921, p. 79), but did return a verdict of guilty of the offense of maintaining a nuisance. The lower court granted the defendant's motion for a new trial and the People prosecute this appeal from that order.

The defendant operated a pool-hall and soft-drink stand in Victorville. The evidence shows that he carried and sold "Amargo Bitters," "Padre Wine Tonic," "Power Wine Tonic" and "Peptol Wine Tonic." The testimony of the prosecution was to the effect that the bitters were not only sold by the bottle but also by the glass. One witness testified that during November, 1928, or two months prior to the arrest of defendant the sale of these bitters by the glass averaged in his judgment three bottles a day; that he had seen several people under the influence of this particular concoction and had been intoxicated therefrom himself. It is well to note that the witness to whom we have just referred had been arrested and convicted of a charge of burglary of defendant's place of business and had been granted probation. He also testified that he was instructed by his employer, the defendant, to sell bitters by the dose and not by the drink. Other witnesses stated that they had seen a number of persons under the influence of liquor in defendant's place of business, but it is not clear that they came under its influence by imbibing too freely of bitters. A witness who clerked for defendant during December, 1928, and January, 1929, testified that he sold bitters "probably twenty-four doses a day." The defendant, on the other hand, asserted his instruction to sell bitters by the dose and the bottle only and that all persons under the

influence of liquor, regardless of who they were, were to be refused service.

The prosecution called chemists to the stand for the purpose of proving the alcoholic content of the liquid sold and that it was fit for beverage purposes. They were unable to state the physiological effect of the bitters other than to testify concerning the effect it had upon them. They did recite that the alcoholic content of "Amargo Bitters" was forty-seven per cent, by volume. On the other hand, the defense introduced the testimony of a practicing physician, and a graduate of Columbia University, to the effect that the liquid was unfit for beverage purposes; that it contained pardomon, cloves and ginger and extracts of that character, and senna, the active principle of which drug is called emodin. He gave it as his opinion that "the ordinary individual drinking that would get the action of those irritants, with either catharsis or their emetic effect before he could absorb enough alcohol to create intoxication''; that the preparation could not "be tolerated as a beverage by the ordinary individual'' because "the physiological action would be such that the system would revolt and eliminate the drug in an abnormal way. I think it would create vomiting, and I think it would create distress.'' The evidence also discloses that the product known as "Amargo Bitters'." is manufactured in Germany and imported to this country; that prior to its admission it is tested by federal prohibition authorities; that when found by them to conform to a certain standard it is classified as "unfit for beverage purposes.'' Testimony was not adduced disclosing what is deemed to be a proper or improper amount to be taken for medicinal purposes other than the statement that the medical profession uses bitters in very small quantities. There was testimony that whisky glasses were used when sales were made by the glass.

■ We must note the provisions under which the respondent was convicted, keeping in mind that he was acquitted of the charge of selling intoxicating liquors. The material part of the section of the National Prohibition Act (tit. 2, sec. 21 [27 U. S. C. A., sec. 33]) under which the respondent was found guilty reads as follows: "Any room, house, building, boat, vehicle, structure, or place where intoxicating liquor is manufactured, sold, kept, or

bartered in violation of this chapter, and all intoxicating liquor and property kept and used in maintaining the same, is hereby declared to be a common nuisance, and any person who maintains such a common nuisance shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than $1,000 or be imprisoned for not more than one year, or both." For the purposes of the discussion we may assume, in keeping with the authorities, that a person who sells medicated preparations, unfit for beverage purposes, to the ordinary person, but containing sufficient alcohol to produce intoxication, intending—or under circumstances from which it is fairly and reasonably inferable—that it is to be used for beverage rather than for medicinal purposes, may be guilty of an unlawful sale of intoxicating liquors. (*Goode* v. *State,* 87 Miss. 495 [40 South. 12] ; *Young* v. *State,* 137 Miss. 188 [36 A. L. R. 717, 102 South. 161] ; *Massei* v. *United States,* 295 Fed. 683.) Inasmuch, however, as the jury acquitted the respondent of this charge it must have found that the intent or the circumstances already mentioned did not exist. Undoubtedly the respondent could not have been prosecuted under the second count for merely possessing the medicated compounds carried by him. (*Young* v. *State, supra.*) A conviction, therefore, on the second count necessarily involves a finding of the sale of the preparation with intent or under circumstances from which it is reasonable to infer that it was to be used for beverage purposes. We do not find it necessary to determine, although it seems obvious, that the two verdicts are necessarily inconsistent, but an analysis of the situation must indicate that they were so at variance with each other as to, at least, give rise to a very serious doubt in the mind of the trial judge concerning the finding of the jury. Under such circumstances, taking into consideration the attack made upon the credibility of the witness who gave the most exact and damaging testimony, the statements of the physician, and the denials of the respondent, we do not find that clear and unmistakable abuse of discretion which would warrant us in reversing an order granting a new trial.

Order affirmed.

Works, P. J., and Craig, J., concurred.