STATE OF IOWA, Appellee, v. NATIONAL SELRIGHT ASSOCIATION,
Appellant.

INTOXICATING LIQUORS: Medicinal Compound as Beverage.   A
1  medicinal compound which is intoxicating and capable of being used
   as a beverage is under the ban of our intoxicating liquor statutes,
   irrespective of the fact that, when used as a beverage, it might be
   nauseating and unpleasant to a new recruit and palatable only to a
   drinker of the pickled variety.

TRIAL:  Objections—Intermingled Relevant and Irrelevant Matter.   It
2  is not error to overrule an objection which is made in the middle of

an answer, when the answer contains both relevant and irrelevant matter, and the objector fails to specify what part of the answer he deems irrelevant.

**INTOXICATING LIQUORS:** Federal Permit to Manufacture Medical
3   Compound. Federal permits, under the National Prohibitory Act, to manufacture so-called medical compounds, afford no protection to a dealer in this state, when the compound is intoxicating and capable of being used·as a beverage.

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

NOVEMBER 22, 1921.

Under a search warrant, 25 cases of Old Reserve and a small quantity of Beef, Iron & Wine and of Stearns Tonic were seized. The principal contention is in regard to the Old Reserve Tonic. The National Selright Association is a wholesale drug firm, with its principal place of business in Des Moines, Iowa. It appeared, and filed a resistance, claiming to be the owner, and that the liquors seized are bona-fide medicinal preparations, and not intoxicating liquor, and incapable of being used as a beverage. It asked the return of the liquor. The liquor was seized January 25, 1921. The trial court ruled that Old Reserve and Beef, Iron & Wine were intoxicating liquors, capable of being used as a beverage, and that they were banned by the Iowa law; and that the Old Reserve comes under the ban of the Iowa law, notwithstanding the Federal statute and the certificate or permit from the Federal authority. The liquors were ordered destroyed. The defendants appeal.—*Affirmed.*

*Samuel Abrahamson,* for appellant.

*Ben J. Gibson,* Attorney General, and *B. J. Flick,* Assistant Attorney General, for appellee.

PRESTON, J.—The stockholders in the defendant association are, in the main, some 300 retail druggists in the state of Iowa. It purchased a quantity of Old Reserve from the Old Reserve Distributing Company,. the manufacturers. The last named company has a Federal permit to purchase and use alcohol in the manufacture of Old Reserve, under the provisions of the National Prohibition Act, and to manufacture Old Reserve. There

1. INTOXICATING LIQUORS: medicinal compound as beverage.

is no evidence of sales by the defendant association to any but retail druggists. Some of the liquors such as that seized were purchased from a drug store, and upon analysis, showed 20 per cent of alcohol. The court found that the liquors contained over 20 per cent of alcohol.

1.   Appellants contend that the substances in question were medicinal compounds; that they were so compounded with other substances as to destroy their use as a beverage. They say that, this being so, the liquids could be lawfully sold, even though they contained a large percentage of alcohol. This presents a question of fact in each case. In one case, the evidence might show that a compound was intoxicating, and capable of being used as a beverage, while in another case, the evidence might utterly fail to show such facts in regard to the same substance. It is conceded in this case that it is a question of fact. There is an abundance of evidence in this record to sustain the finding of the trial court. Professor Galloway analyzed samples, and found more than 20 per cent of absolute alcohol. He says he found no evidence of medicinal qualities except those of port wine, and that the compound would be intoxicating, the same as port wine would be. Mr. Jordan, assistant state chemist, testifies:

"I made an analysis of preparation known as Old Reserve, at the instigation of Mr. Hammond. I analyzed the contents of the bottle marked Exhibit B, and found 20.14 per cent alcohol by volume, total solids 6.42 grams per 100 cc., and reducing sugars 5.51 gms. per 100 cc. I also found tannic acid and pectin present. The rest of the contents was water. The reducing sugars also contained tannic acid and pectin. Don't know as I ever analyzed ordinary port wine. Port wine contains from 18 to 20 per cent alcohol—about the same as Old Reserve. Whisky contains more alcohol. In my judgment, Old Reserve tonic is an intoxicant, and might be used for beverage purposes. Found no aloin, buckthorn, or cascarin. I did not test for cardamon. There might be some gums or resins—a very small amount. I wouldn't consider Old Reserve a medicine, as the term is ordinarily used and accepted."

Professor Kinney, testifying for the defendant, says that his analysis showed 1.17 per cent total solids by weight; that he detected the presence of aloin, buckthorn, cardamon, and cascara,

and a small amount of sugar; that the solids were composed of extract drugs, and that alcohol was a preservative, and that this compound would ferment and spoil quickly without alcohol; that aloin is a laxative, and used as a stomach tonic; that cascara, buckthorn, and cardamon are general laxatives; that it would be classed as medicine; that it tasted bitter, and would be nauseating to most people. But he testified, on cross-examination:

"I think it might be used as a beverage. Some people might use it as a beverage, and if it was used that way, it would be intoxicating."

Witness Hammond, state agent, was with the sheriff, when these liquors were seized.

"I found three bottles of Beef, Iron, and Wine empty on the second floor of the place, and one bottle of it half full. Delivered a bottle of Old Reserve to Professor Galloway, to be examined."

2. TRIAL: objections: intermingled relevant and irrelevant matter.

He says further that the liquor was taken to the jail after it was seized. On cross-examination, he says:

"I mean by liquor, this liquor that was disguised as patent medicine. Q. You mean this Old Reserve Tonic, Beef, Iron, and Wine, and Stearns Tonic? A. Yes, sir. I want to say further that, on Monday following, I saw three young men in a hotel, who had a bottle of Old Reserve, the same brand—(At this point, counsel for appellants made this statement: "I do not believe this testimony is competent, relevant, or material, and is not binding on this party." Overruled and defendant excepts. Witness continued with his answer.) "One of the fellows took out a knife and cut the seal off the top, and the other one had a knife with a corkscrew in the back of it, and pulled the cork out. The three men drank it until the bottle was empty. The bottle was set down on the washstand, and I picked it up and took it with me. It is identically the same kind of a bottle, label, and seal, which is on this Old Reserve. I took one of the bottles of this Old Reserve to the state chemist, and one to Professor Galloway, who analyzed it as to whether it was properly medicated, so that it might not be used as a beverage."

It is claimed that there was error at this point, in overruling the objection, if it was an objection. It will be observed that the statement by Mr. Abrahamson was made in the middle of the

answer of the witness. There was no motion to exclude the answer, or any specific part of it. The statement is that this testimony was not competent, etc. A part of it was proper, and in response to questions propounded by counsel for defendant. No specific objection or motion was made as to the part of the answer claimed to be improper. *State v. Hasty,* 121 Iowa 507, 517; *Hay v. Hassett,* 174 Iowa 601, 607; *Bank of Bushnell v. Buck Bros.,* 161 Iowa 362, 365. We think there was no error here of which appellants may complain.

The sheriff testified that he did not have the Beef, Iron, and Wine analyzed; that it had been analyzed and tried before the courts several times, and been condemned; that he knows the percentage of alcohol only by what is marked on the bottle—18 per cent, and the Stearns Tonic 15 per cent. The sheriff was also asked separately as to whether the Old Reserve Tonic, the Beef, Iron, and Wine, and the Stearns Tonic were used as a beverage, and he said it was. This was over objection by defendants that it was calling for the opinion of the witness. The sheriff did not state how he knew that the different substances were used as a beverage, except as to the Old Reserve. He says he knows that was used as a beverage, because a man offered it to him as a beverage, and the man himself was drunk on it. Witness tasted it,— took just a swallow. The deputy sheriff testified as to negotiations with the manager of defendant association, in regard to trying to buy a case of Old Reserve, and to buying a bottle of it, which was tested and analyzed; also, as to a conversation with one of defendant's salesmen. The conversation was objected to as hearsay, and it may be so; but, as before stated, the evidence was sufficient, and it was sufficient without the testimony alleged to be objectionable. The case was tried to the court.

Without prolonging the discussion, or again reviewing the cases, it is enough to say that our conclusion is sustained by the following cases: *State v. Gregory,* 110 Iowa 624; *McNiel v. Horan,* 153 Iowa 630; *State v. Silka,* 179 Iowa 663; *State v. Snyder,* 185 Iowa 728; *Stajcar v. Dickinson,* 185 Iowa 49; *State v. Bokmeyer Bros.,* 187 Iowa 1312; *Slate v. Andrews,* 188 Iowa 626; *State v. Higgins,* 192 Iowa 201.

2.. Appellant's next proposition is stated thus: Is the term "capable of being used as a beverage" to be applied in cases of

the average individual with average tastes, or otherwise? And the argument is that the term "beverage" is defined as a liquid for drinking, artificially prepared, and of an agreeable flavor; that it is used to distinguish the act of drinking liquor for the mere pleasure of drinking, from its use for medicinal purposes. It is therefore contended that, before the court could find that the different tonics seized are beverages, or capable of being used as beverages, it must be found that a man of average tastes would drink Old Reserve for the pleasure of drinking it, as readily as he would drink a cup of coffee, etc.

We assume that appellant's meaning is that a so-called white liner, who might find it necessary to drink pure alcohol or carbolic acid before he could taste it, would drink liquid containing alcohol, even though it was medicated to some extent; whereas new recruits would not drink it. The class first mentioned is gradually dying off, or becoming bleached out for lack of sustenance. The coming generation may not so readily acquire the habit to the extent indicated. Under the first definition suggested by appellants, pure alcohol or straight whisky might not have an agreeable flavor to many; and yet no one would claim that it could not be used as a beverage, within the meaning of the liquor laws. There is no evidence in the record to show what an "average taste" would be. It might be difficult to determine; but, after all, the law makes no distinction in tastes, or between individuals with an intense thirst and those whose desire is not so well developed.

3. In addition to the claim that these tonics were bona-fide medicinal preparations, the resistance filed by defendants set up that the Old Reserve Distributing Company has a Federal permit under which Old Reserve is manufactured. The Federal Prohibition Act, passed pursuant to the Eighteenth Amendment, authorizes the commissioner of internal revenue, or his agents, to grant such permits. It is thought that this is binding on the state of Iowa, and that the state has no right to interfere with the distribution and sale of Old Reserve for medicinal purposes. We do not understand the State to claim, in this case, that it would have a right to interfere with the distribution for medicinal purposes. They are claiming that the state may interfere

3. INTOXICATING LIQUORS: Federal permit to manufacture medical compound.

where the article containing alcohol is, or may be, sold and used as a beverage. Conceding that the liquids in question, and more particularly, perhaps, the Old Reserve and its formula, may be recognized by the United States Pharmacopœia, National Formulary, or the American Institute of Homeopathy, this does not control the action of the court in determining whether or not a liquor is intoxicating, and capable of use as a beverage. The fact that defendant had such a permit does not guarantee it immunity from prosecution, in case it manufactured an intoxicating liquor fit for use for beverage purposes, either under the Federal act or the statutes of Iowa; nor would it grant immunity from prosecution to this defendant when it undertook to keep for sale and sell the manufactured product of the manufacturer of Old Reserve, when that product is, in fact, an intoxicating beverage. We have frequently held that a United States internal revenue license does not authorize the holder to violate the law of the state. There is some analogy between such a license and the permit herein relied upon. If the distributing company had any authority to produce Old Reserve, it was under Section 4, Title 2, of the Volstead Act. This section provides that medicinal preparations, unfit for beverage purposes, are excepted, and that the commissioner of internal revenue, or his agents, may issue permits for the manufacture and sale of medicinal preparations containing alcohol, unfit for beverage purposes. So that neither of these sections authorizes the manufacture of compounds under the United States Pharmacopœia, National Formulary, or the American Institute of Homeopathy formulas, which are fit for use as beverages.

It is argued at some length by appellants that the Eighteenth Amendment and the National Prohibition Act are the supreme law of the land, and in case of conflict, are paramount to any state law. It is conceded, however, that, under the holding in *People v. Foley*, 113 Misc. Rep. 244 (184 N. Y. S. 270), the Federal law takes precedence over the state liquor laws only in so far as they conflict with it. In so far as the point now under consideration is concerned, we are unable to see any conflict. The State is not seeking to defeat the prohibition provided for by the Federal Constitution, as has been attempted by some of the states, by passing more liberal liquor laws than the Eight-

eenth Amendment permits. The Eighteenth Amendment provides that Congress and the several states shall have power to enforce its provisions by appropriate legislation; and it was held, in *Ex Parte Crookshank*, 269 Fed. 980, that, while a state may not, by legislation, defeat national prohibition, it can legislate more rigorously than Congress, in furtherance of complete prohibition. There is no conflict between the power of the Federal government and the state government, unless it amounts to repugnancy or conflict of such a direct and positive nature as that the two acts could not be reconciled, or consistently stand together. Any legislation by Congress or by a state must be in aid of the enforcement of the amendment, or in furtherance of the prohibition therein commanded.

We do not feel justified in going into the matter more deeply at this time. In support of our conclusion, see *National Prohibition Cases*, 253 U. S. 350.

The judgment of the district court is—*Affirmed.*

EVANS, C. J., WEAVER and DE GRAFF, JJ., concur.