MAHOOD *v.* CALDWELL ET AL.

(Decided November 18, 1929.)

*Messrs. Meade & Weygandt,* for plaintiff in error.
*Messrs. Roetzel, Hunsicker & Olds* and *Messrs. Berk, Berk & Harvey,* for defendants in error.

FUNK, P. J. The parties in this court are in the same relation as they were in the court below, and will be referred to as plaintiff and defendants.

Plaintiff, Kent T. Mahood, filed his petition in the common pleas court under Section 6202, General Code. The material parts of the petition read:

"Plaintiff says that on or about February 17, 1925, Stanley H. Caldwell owned and operated the Robinson Service Station at 1538 Kenmore Boulevard. That the defendant Harry D. Shriber, owned and operated Shriber's Service Station at 1603 Kenmore Boulevard, Kenmore, Ohio. That the defendants Francis S. Shoemaker and Ralph Fox owned and operated a gasoline service station at 1619 S. Main street, Akron, Ohio, under the name of Shoemaker and Fox. * * *

"For his cause of action the plaintiff states that on or about the 17th day of February, 1925, his father, James D. Mahood, purchased from each of the defendants at their places of business, as hereinbefore set forth, certain quantities of intoxicating liquor, to wit: denatured alcohol. That said intoxicating liquor was sold by the several defendants to James D. Mahood for beverage purposes.

"Plaintiff further says that the several defend-

ants sold said intoxicating liquor to James D. Mahood contrary to law in this to wit: That said intoxicating liquor was placed in glass bottles of about one-half pint capacity and without any label on said bottle showing the nature of the contents of said bottle, but that the defendants knew what the said bottles contained and sold the same for the purpose of being drank by the said James D. Mahood and to cause his intoxication.

"Plaintiff further says that James D. Mahood drank said intoxicating liquor bought from the several defendants. That as a result of his drinking said intoxicating liquor he became wholly intoxicated and insensible and lost all of his faculties and his power of locomotion. That as a result thereof he was forced to be exposed to the weather and elements on the night of the 17th of February, 1925, when it was extremely cold and that both of his legs from the knees to the feet, and both of his feet were completely frozen.

"Plaintiff further says that as a result of the freezing of the legs and feet of James D. Mahood, as above described, it was necessary to amputate both of his legs a few inches above the knees and that by reason of said amputation the said James D. Mahood is wholly incapacitated from earning anything to support himself.

"Plaintiff further says that because of the intoxication of James D. Mahood which resulted in the freezing of both of his legs from the knees to the feet, and both of his feet, necessitating the amputation of the legs of James D. Mahood, he, the plaintiff, was required to expend One Thousand Dollars ($1,000.00) in medical services for the treatment

of the said James D. Mahood and for the amputation of his legs.

"Plaintiff further says that as a result of the intoxication of said James D. Mahood and the injuries resulting therefrom, as above described, the said James D. Mahood is entirely without means of support and that the plaintiff has supported him since the 17th day of February, 1925, and will continue to support him for the remainder of his life. All to his damage in the sum of Twenty Thousand Dollars ($20,000.00) * * *."

The defendants each filed separate demurrers to the petition upon the same grounds, to wit: First, that there is a misjoinder of parties defendant; second, that the petition does not state facts sufficient to constitute a cause of action; and, third, that the alleged cause of action is barred by the statute of limitations. The court below sustained these demurrers as to the first and third grounds, and overruled them as to the second ground. Plaintiff not desiring to plead further, the case was dismissed at the costs of the plaintiff, who is now here seeking a reversal of that judgment.

First, Is there a misjoinder of parties defendant?

Counsel for defendants contend that, as "there is no allegation that these defendants in any manner joined or co-operated in the sales of the denatured alcohol, or that any one of them had any knowledge at any time of any sale to the said James T. Mahood by the other," they are improperly joined as defendants, because, "in the absence of any concert of action on the part of the defendants, each one of such sales would constitute a separate and distinct cause of action," and that therefore these causes of

action against the several defendants cannot be joined.

Section 6202, General Code, under which this action was brought, reads as follows:

"Whoever, by the sale of intoxicating liquors contrary to law, causes the intoxication of another person, shall pay a reasonable compensation to any person taking charge of and providing for such intoxicated person, and one dollar per day in addition thereto for each day such intoxicated person is kept in consequence of such intoxication. Such sum may be recovered in a civil action before any court having jurisdiction thereof."

This section was formerly Section 6 of an act originally passed on May 1, 1854, "To provide against the evils resulting from the sale of intoxicating liquors in the State of Ohio." 52 Ohio Laws, 153; 2 Swan & Critchfield, page 1432.

Counsel for plaintiff in error, reasoning by analogy, rely upon the case of *Rantz* v. *Barnes,* 40 Ohio St., 43, to sustain their position.

The action in that case was brought under Section 7 of said Act of May 1, 1854, as amended April 18, 1870 (67 Ohio Laws, 102) — being now Section 6203, General Code—which was worded somewhat different than Section 6202 is now, and different than said Section 6 of said Act of May 1, 1854, as originally enacted, and Section 6203 as now in force. The part of Section 7, as amended April 18, 1870, bearing on joint and several liability, reads that certain designated relatives of the person to whom the liquor was furnished "shall have a right of action in his or her own name, severally or jointly, *against any person or persons who shall,* by selling or giv-

ing intoxicating liquors, *have caused the intoxication, in whole or in part,* of such person or persons.''

It is conceded by counsel for defendant that, if more than one person contributed to the intoxication, they could be jointly and severally liable under the particular wording of said Section 7 as in force at the time the cause of action accrued in the case of *Rantz* v. *Barnes,* but contend that, as the court was only construing the wording of said Section 7 as then in force, the reasoning therein has no application to Section 6202, General Code, as now in force, and under which the action in the instant case is brought.

It will be noted that the part of Section 6 of the Act of May 1, 1854, bearing on joint or several liability, originally read, ''That every person who shall * * * cause the intoxication of any other person, *such person or persons* shall be liable for,'' etc.; that said Section 6 became Section 4356 of the Revised Statutes of 1880, where it was changed to read, ''Whoever * * * causes the intoxication of another person, shall * * * pay'' etc., which is the same as is now in force as Section 6202, General Code; that the word ''who'' is a pronoun referring to one or more persons, and denotes plural as well as singular, and that ''whoever'' is also such a pronoun, meaning ''every person who,'' and refers to one or more persons, and that therefore the language used in Section 6202, General Code, as to joint and several liability, is not materially different in meaning from that of said Section 7 under consideration in *Rantz* v. *Barnes, supra.*

Furthermore, we call attention to the case. of *Boyd* v. *Watt,* 27 Ohio St., 259, not cited by counsel

on either side, in which our Supreme Court construed Section 7 of the Act of May 1, 1854 (52 Ohio Laws, 153; 2 S. & C., page 1432), as originally enacted, in reference to the liability of one of several co-wrongdoers. The part of said original Section 7 bearing on such liability read that certain relatives of the person to whom the liquor was furnished "shall have a right of action in his or her own name, against any person who shall, by selling intoxicating liquors contrary to this act, have caused the intoxication of such person." The court in the opinion in that case, after stating that counsel contended that, if there is no common intent, there can be no joint liability, but that each is responsible only for his own act, said, beginning at the bottom of page 267 of 27 Ohio State:

"In this we think they mistake the authorities. We hold that this common intent, which is sufficient to create mutual liability, may exist without previous agreement or a common understanding to do an unlawful act, and that it may be presumed to exist, when the means employed creates that presumption, as well as by proving an express agreement."

And on page 268 of 27 Ohio State, the court further said:

"To constitute parties co-wrongdoers, it is not necessary to show they acted by preconcert, if they were intending to do the same injury, and were acting simultaneously in its accomplishment. In such case they are jointly and severally liable."

The court in this opinion also quoted from *Stone* v. *Dickinson,* 5 Allen (Mass.), 29, 81 Am. Dec., 727, with approval, as follows:

"It is the fact that they all united in the wrongful

act, or set on foot or put in motion the agency by which it was committed, that renders them jointly liable to the person injured."

And from Shearman & Redfield on Negligence, Section 58, as follows:

"Persons who co-operate in an act directly causing injury are jointly liable for its consequences, if they act in concert, or unite in causing a single injury, even though acting independently of each other."

And in the syllabus of that case the court said that "it is not essential to a recovery that the defendant shall have been the *sole* cause of such habitual intoxication" and that "one who contributes to cause that condition by his illegal sales, which of themselves tend to, and are calculated to produce that result, is presumed to have intended it, and is liable for the damages resulting, though others may, by their illegal sales, have contributed thereto, without his knowledge, or without preconcert with him," and that, where "it becomes impossible to separate the damages caused by others from those caused by the defendant, he is liable for all such damages, if the natural and probable consequences of his illegal acts were to cause such injury."

It follows, of course, that if one is liable for all the damages resulting, though others may have contributed thereto without his knowledge, because it is impossible to separate the damages caused by each, all those contributing to the injury can be held jointly liable, which would be much more just and equitable than to hold but one of them.

It is therefore clear, from the history of said Sec-

tions 6 and 7 of said Act of May 1, 1854, which are now in force as Sections 6202 and 6203, General Code, respectively, and the holdings of our Supreme Court in the cases of *Rantz* v. *Barnes, supra,* and *Boyd* v. *Watt, supra,* that, if there was joint and several liability under said Section 7 as originally enacted, it surely cannot be said there is no joint and several liability under Section 6202, General Code, as now in force or as originally enacted.

As the petition clearly alleges but a single injury and a single intoxication, and that the illegal sales of each of the defendants contributed to said intoxication, which resulted in the necessity of taking charge of and providing for said intoxicated person, we hold that there is not a misjoinder of parties defendant.

As to the second ground of demurrer, that the petition does not contain facts sufficient to constitute a cause of action, it is contended that denatured alcohol is not an intoxicating liquor within the meaning of Section 6202, General Code, for the claimed reason that it does not come within the meaning of "intoxicating liquor" as defined in Section 6212-14, General Code, which reads as follows: "The phrase 'intoxicating liquor' shall be construed to include * * * any liquid or compound whether or not same is medicated, proprietary, or patented, and by whatever name called, containing one-half of one per cent. or more alcohol by volume which is fit for use for beverage purposes," it being the contention that, even though denatured alcohol may be classified as a liquid or compound containing more than one-half of one per cent. alcohol, it can-

not be classified as "fit for use for beverage purposes," for the reason that the very purpose of denaturing alcohol is to make it unfit for beverage purposes.

Counsel cite no decisions, and we find none, directly concerning denatured alcohol. However, in the case of *Ballabanos* v. *State,* 15 Ohio App., 520, the court held Jamaica ginger containing a large percentage of alcohol as "fit for use for beverage purposes" when sold for that purpose, and that merely because it was injurious to health was no reason why the vendor was not liable for a violation of the liquor laws.

In the case of *State* v. *Certain Intoxicating Liquors,* 192 Iowa, 629, 185 N. W., 145, it was held that a medicinal compound, to constitute a beverage violating the prohibition laws, need not be pleasant to the taste or such as a person of average taste would drink.

The following are some of the decisions to the effect that, where a liquid compound containing more than one-half of one per cent. alcohol is sold with the knowledge and intention of the seller, and the intention of the buyer, that it is to be drunk for the purpose of causing intoxication, it is such a liquid compound as will be held to be fit for use for beverage purposes under statutes similar to Section 6212-14, General Code; *State* v. *Johnson,* 113 S. C., 350, 101 S. E., 851; *State* v. *Krinski,* 78 Vt., 162, 62 A., 37; *State* v. *Costa,* 78 Vt., 198, 62 A., 38; *State* v. *Hastings,* 25 Del. (2 Boyce), 482, 81 A., 403; *Walker* v. *Dailey,* 101 Ill. App., 575; *Dutton* v. *State,* 21 Okl. Cr., 186, 205 P., 940.

While it may be true that the denaturing of alcohol is supposed to make it unfit for use for beverage purposes, we are not prepared to say that when denatured alcohol is sold by the seller for the purpose of being drunk, and with the knowledge that it is to be drunk for the purpose of causing intoxication, it is not "fit for use for beverage purposes" within the meaning of the statute, and especially when the denatured alcohol so sold is drunk by the purchaser, and so completely intoxicates him as to make him unconscious, but does not kill him. We therefore hold that the petition does state a cause of action.

As to the third ground of the demurrer, that the cause of action is barred by the statute of limitations, we are clearly of the opinion that the cause of action alleged in the petition is purely a liability created by statute, and is not a forfeiture or a penalty. Section 11222, General Code, provides that such an action must be brought within six years from the time it arose; and, it appearing from the petition that this action was commenced within that time, it is not barred by the statute of limitations. We therefore hold that the demurrers should have been overruled on all three grounds, and that the court erred in sustaining the demurrers upon the first and third grounds. The judgment is therefore reversed and the cause remanded to the common pleas court for further proceedings according to law.

*Judgment reversed and cause remanded.*

PARDEE and WASHBURN, JJ., concur.