# BERNARD POWELL *v.* STATE OF MARYLAND

[No. 25, January Term, 1941.]

*Decided March 5th, 1941.*

The cause was argued before SLOAN, MITCHELL, JOHNSON, DELAPLAINE, and COLLINS, JJ.

*Herbert H. Rosenbaum,* for the appellant.

*Robert E. Clapp, Jr., Assistant Attorney General* and *Morton E. Rome, Assistant States Attorney for Baltimore City,* with whom were *William C. Walsh, Attorney General* and *J. Bernard Wells, States Attorney for Baltimore City* on the brief, for the State.

DELAPLAINE, J., delivered the opinion of the Court.

Bernard Powell, the appellant, was indicted, tried and convicted in the Criminal Court of Baltimore City for unlawfully selling an alcoholic beverage without a license and otherwise violating the Maryland Alcoholic Beverages Act. The evidence showed conclusively that he sold diluted denatured alcohol in a house on Watson Street in Baltimore. The question to be decided is whether the sale of denatured alcohol for beverage purposes without a license is a violation of the law.

The statute provides that it shall be unlawful for any person to sell an alcoholic beverage without a license, except as therein provided. Code, art. 2B, sec. 2. It further declares that the term "alcoholic beverage" includes any liquor containing one-half of one per cent or more of alcohol by volume, which is "fit for beverage purposes." Code, art. 2B, sec. 1. The appellant contends that since denatured alcohol is poisonous it is not fit for beverage purposes.

At the trial of the case in the court below, sitting without a jury, the chief of the bureau of Standards of Balti-

more testified that the alcohol, denatured according to government specifications, contained wood alcohol and gasoline. After being diluted, it contained 34.4 per cent of alcohol. The Court granted an advisory instruction offered by the State that if the Court found beyond a reasonable doubt that the defendant had sold for beverage purposes denatured alcohol, diluted with water so as to contain 34.4 per cent of alcohol, then as a matter of law it was an "alcohol beverage" as defined by the statute. The Court rejected the defendant's prayer that even though he had sold the denatured alcohol for beverage purposes, the Court might find him not guilty. If an instruction in a criminal case be erroneous, even though in a mere advisory form, it may be made the subject of an exception which can be considered on appeal. *Beard v. State,* 71 Md. 275, 281, 17 A. 1044, 1046.

The cardinal rule of construction of statutes is to ascertain the intention of the Legislature. This intention must be sought, first of all, in the language of the statute itself. But if a word is fairly susceptible of two or more interpretations, the Court should seek the intention by considering the object to be accomplished, and adopt the meaning which will harmonize with the general scheme of the statute and assist in carrying out the legislative purpose. *United States v. Nomel Products Co.,* 41 Fed. 2nd 544; *Black, Interpretation of Laws,* secs. 24, 25, 27, 30; 59 *C. J. Statutes,* secs. 563, 569, 570. The purpose of the Maryland Legislature, as declared in the title of the Alcoholic Beverages Act, was not merely to license the sale of certain alcoholic beverages, but to regulate and control the liquor traffic in the State. Acts of 1933, Extra Sess., Ch. 2. It is observed that druggists are not required to have a license to sell medicinal, antiseptic or toilet preparations which are unfit for beverage purposes, but no druggist is allowed to sell alcoholic beverages for beverage purposes without a license. Code, art. 2B, sec. 2. Unquestionably, if druggists are forbidden to sell alcoholic liquors for beverage purposes without a license, other persons should likewise be forbidden. Moreover,

the statute provides that any license issued thereunder may be revoked for any cause which may be necessary to promote the peace or safety of the community in which the place of business is situated. Code, art. 2B, sec. 57. There is even greater need for the regulation of the sale of denatured alcohol, which is apt to cause blindness of the addicts, than the sale of less harmful liquors.

According to the dictionaries, the following are among the meanings of the adjective "fit": (1) comformable to a standard of right, duty or appropriateness; proper; suitable; befitting; and (2) adopted to an end, object or design. We hold that the Legislature intended the second definition: "adapted to an end, object or design." This accords with the view of the Ohio Court of Appeals, which applied to the word "fit" in the liquor statute of that State an ancient definition said to have been used as early as the third century: "in correspondence with some other thing." *Ballabanos v. State,* 15 Ohio App. 520. In the State of Washington, where the statute declared that the term "intoxicating liquor" should include all liquors "capable of being used as a beverage," the Court declared that the term should not be limited to those liquors which might be supposed to be reasonably fit to drink, or which some persons might consider palatable. *State v. Ebel,* 169 Wash. 326, 13 P. 2nd 1091, 1092. It is immaterial whether the liquor is suitable or desirable for beverage purposes, if it is prohibited by law and is in fact used as a beverage.

In 1881, when Kansas adopted prohibition, the Supreme Court of Kansas held that the law was not intended to forbid the sale of well-know medicines and culinary and toilet articles containing alcohol, but might apply to compounds or preparations which, while ostensibly made for medicinal purposes, are used merely as substitutes for the usual intoxicating beverages. Justice Brewer stated in that early case: "Whether any particular compound or preparation of this class is then within or without the statute, is a question of fact, to be established by the testimony and determined by a jury. The courts may not

say as a matter of law that * * * any particular in-
gredient does or does not * * * prevent it from ever
becoming an intoxicating beverage." *Intoxicating Liquor
Cases,* 25 Kan. 751, 37 A. M. Rep. 284, 294.

For some years, however, the Courts took the view that
denatured alcohol, being poisonous, is unpotable and not
an alcoholic beverage. The Supreme Court of Vermont,
for instance, asserted in 1900: "Such alcohol is obtained
by the destructive distillation of wood, is ranked as a
narcotic poison, and * * * it kills the person drinking it.
It was not intended to be used as a beverage, and could
not be so used." *Fabor v. Green,* 72 Vt. 117, 47 A. 391.
But today it is widely known that denatured alcohol is
frequently used as a beverage by degenerates. In the
case at bar it was testified that diluted denatured alcohol
is commonly known in Maryland as "smoke." In Mon-
tana, where a retail store repeatedly sold rubbing alcohol
to addicts known as "dehorners," the Court asserted that
such a sale is a violation of the law when made under
circumstances from which it might reasonably be de-
duced that the purchaser intended to use it for beverage
purposes. In reference to the argument that such alcohol
is not actually fit to drink, the Court said: "It is also
quite clear that such denatured alcohol could be used as
a beverage by persons of depraved tasts, so it cannot be
urged that such denatured alcohol could not be used for
this purpose." *United Cigar Whelan Stores Corporation
v. United States,* 9 Cir. 113 Fed. 2nd 340, 344. While
it is true that the denaturing of alcohol is supposed to
make it unfit to drink, the Court should not say as a
matter of law that when it is actually sold with the
knowledge that it is to be drunk for the purpose of caus-
ing intoxication, it is not "fit for beverage purposes"
within the meaning of the statute, especially when the
liquor completely intoxicates the purchaser without in-
stantly killing him. *Mahood v. Caldwell,* 33 Ohio App.
292, 169 N. E. 317, 320. For that matter, as the Alabama
Court of Appeals has said, there are some people who
believe that most alcoholic liquors, which give rise to

prosecutions for violations of prohibition statutes, are really not suitable for beverage purposes. *Arnold v. Town of Hamilton,* 21 Ala. App. 548, 109 So. 896.

Likewise in New York, when it was contended that whiskey containing wood alcohol did not come within the scope of the National Prohibition Act because it was unfit for human consumption, the Court declared: "If such an argument were to prevail, it would constitute an easy defense to many a bootlegger called upon to answer to a charge of violation the National Prohibition Act. He could say that the beverage which he sold was adulterated with some deleterious ingredient which made it unfit to drink, and therefore he had not violated the statute. No Court would countenance such a defense." *Bolivar v. Monnat,* 248 N. Y. S. 722, 728. In a Federal case, where the defendants were charged with transporting denatured alcohol, the Court said that it was not necessary to prove that the liquid was actually fit for beverage purposes at the time of seizure, for otherwise the purpose of the law might be easily defeated. *Hawthorne v. United States,* 4 Cir., 37 Fed. 2nd. 316. A liquor is fit for beverages purposes if it can be made potable by a simple process such as dilution with water or ginger ale. *Burtnett v. United States,* 10th Cir., 62 Fed. 2nd 452, 455. As long as liquors retain their character as intoxicants and are capable of being used as a beverage they fall under the ban of the law, notwithstanding that other ingredients may have been mixed with them. *State v. Laffer,* 38 Iowa 422.

Of course, when enforcement authorities have classified a medicinal preparation as unfit for beverage purposes, and no permit is accordingly required for its sale, a dealer can not be prosecuted for selling it for nonbeverage pruposes without a permit. To hold that one who deals in such preparations in good faith is guilty of violating the statute would be to give it a scope which the Legislature never intended. *State v. Sandman,* 159 La. 451, 105 So. 451, 453. But, when sold for beverage purposes, medicinal, culinary or toilet preparations

should be classed as intoxicating beverages within the prohibition of the statute, although not ordinarily used as beverages. *State v. Krinski*, 78 Vt. 162, 62 A. 37. Whether a medicinal compound, containing a large percentage of alcohol but so compounded with other substances as apparently to destroy its use as a beverage, can actually be used as a beverage is a question of fact to be determined from the intent of the parties in each case. *State v. Certain Intoxicating Liquors*, 192 Iowa 629, 185 N. W. 145; *Young v. State*, 137 Miss. 188, 102 So. 161, 36 A. L. R. 717. If there is no intent to sell such a preparation for other than legitimate uses, there is no offense. If, however, a preparation is capable of being used as a beverage, and is sold with the purpose or understanding that it is to be used as a beverage, then an offense is committed. *State v. Costa*, 78 Vt. 198, 62 A. 38, 41.

It was held by the Supreme Court of Indiana that since wood alcohol is a poison, it is not an "intoxicating liquor" within the prohibition statute. But in that case the Court explained: "It is not alleged and is not proven that wood alcohol had ever been used as a beverage or sold as a beverage, or that it is a liquor reasonably likely or intended to be used as a beverage." *Hamilton v. State*, 191 Ind. 466, 133 N. E. 491, 492, 19 A. L. R. 509, 512. In a later case, the same Court held that while medicinal preparations and flavoring extracts, which have been manufactured according to certain formulae and are generally considered unfit for use as beverages, are not within the purview of the statute, the seller would violate the law if he made sales under circumstances from which he might reasonably deduce the intention of the purchaser to use such articles as intoxicating beverages. *Ellwanger v. State*, 203 Ind. 307, 180 N. E. 287, 291. Likewise, the sale of denatured alcohol without a license in this State is a violation of the law when the seller intentionally perverts its traffic.

In 1930 the United States Supreme Court decided that a permit to use intoxictaing liquor in the manufacture of

medicinal preparations is not a permit to manufacture "liquor" within the meaning of the National Prohibition Act. *Campbell v. Galeno Chemical Co.*, 281 U. S. 599, 50 S. Ct. 412, 74 L. Ed. 1063. The Court also held that a permit to operate a denaturing plant is not a permit to manufacture "liquor," since the denaturing process converts liquor into a product which is required to be "unfit for use as a beverage." *Campbell v. W. H. Long & Co.*, 281 U. S. 610, 50 S. Ct. 415, 74 L. Ed. 1070. These decisions were based on the hypothesis that medicinal preparations and denatured alcohol are not intended for use as beverages. Justice Brandeis, who wrote the opinions, observed that there was no evidence whatever in the first record that the medicinal preparations could be fitted for that purpose "by the simple process of adding water, or by any other process," 281 U. S. 606, 50 S. Ct. 414, 74 L. Ed. 1068, and that the second case was decided upon the assumption that "denatured alcohol, however treated, is not fit for beverage purposes." 281 U. S. 616, 50 S. Ct. 414, 74 L. Ed. 1074. Furthermore, the Supreme Court subsequently denied a writ of *certiorari* in the case of *Alksne v. United States*, 1st Cir., 39 Fed. 2nd 62, 69, 281 U. S. 768, 50 S. Ct. 467, 74 L. Ed. 1175, wherein it was held that alcohol is not necessarily rendered unfit for beverage purposes by the fact that it is classified as a poison. The Court said in that case: "Alcohol scientifically may be classified as a poison, but that does not interfere with its being an intoxicating liquor. It is the basic element of all intoxicants. * * * That * * * in terms of science it is classified as a poison, does not render it unfit for beverage purposes within the meaning of the Prohibition Act."

As the appellant violated the Alcoholic Beverages Act, we affirm the judgment entered upon the verdict of guilty. In view of the public interest in the case, the trial court, with the acquiescence of the State's Attorney, ordered the costs of the appeal to be paid out of the Criminal Court Account.

*Judgment affirmed.*