Dear Honorable John M. Colmers
You have requested our opinion whether certain alcoholic beverages commonly referred to as flavored malt beverages ("FMBs") constitute "beer" or "distilled spirits" for tax and licensing purposes under Maryland's alcoholic beverage laws. You note that public health concerns have been raised about the popularity of FMBs among youth, and that the tax and licensing status of those beverages affects their availability to that segment of the population.
Based on our review of Maryland law and FMB formulations reported by the Alcohol and Tobacco Tax and Trade Bureau of the United States Department of the Treasury ("TTB"), we conclude that FMBs fall within the definition of distilled spirits set forth in the State laws governing the taxation and licensing of alcoholic beverages.
 I Flavored Malt Beverages
An FMB is typically a sweet, often fruit-flavored, alcoholic beverage that resembles lemonade, cola, punch, or tea. FMBs are also referred to as "flavored alcohol beverages," "malternatives," "premium malt beverages with natural flavors" and "alcopops." A relatively recent addition to the alcoholic beverages market, FMBs comprise more than 100 brands and brand extensions.[1] *Page 48 
Our knowledge of FMB manufacturing and composition is derived from the TTB's examination of data for 114 alcohol beverage products labeled and marketed as FM Bs. See 70 Fed. Reg. 194-95 (January 3, 2005). Although the alcohol content of most FMBs is similar to traditional malt beverages — in the range of 4-6% alcohol by volume — and they are brewery products distributed through beer and malt beverage wholesalers, FMBs exhibit little or no traditional beer or malt beverage character.Id. Their flavor is derived primarily from added flavors rather than from malt and other material used in fermentation. Id.
The TTB describes the production of FMBs as follows:
 Although [FMBs] are produced at breweries, their method of production differs significantly from the production of other malt beverages and beer. In producing flavored malt beverages, brewers brew a fermented base of beer from malt and other brewing materials. Brewers then treat this base using a variety of processes in order to remove malt beverage character from the base. For example, they remove the color, bitterness, and taste generally associated with beer, ale, porter, stout, and other malt beverages. This leaves a base product to which brewers add various flavors, which typically contain distilled spirits, to achieve the desired taste profile and alcohol level.
70 Fed. Reg. 195.
The TTB also found that most of the alcohol in FMBs is not derived from fermentation of malt and grain. Instead, most of the alcohol in these products is derived from distilled spirits contained in added alcohol flavors. In its analysis, TTB found that over 75% of the alcohol in almost all FMBs studied (105 of 114) was derived from distilled spirits and in some cases the percentage derived from distilled spirits constituted more than 99% of the alcohol in the *Page 49 
FMB. In contrast, distilled spirits flavors constituted 50% or less of the overall alcohol in only 4 of the 114 products TTB studied.Id.
Finally, the TTB found that most FMBs contain very little actual beer base. It determined that 95 of the 114 FMBs in the study contained 0-25% fermented beer base, 4 contained 26-50%, and 15 contained 51% or more fermented beer base. Id.[2] *Page 50 
As you note in your letter, the public health community has voiced serious concerns about the popularity of FMBs among youth,[3] and has advocated raising the price of these and other alcoholic beverages to discourage adolescent alcohol use.[4]
For purposes of this opinion, we use the term FMB to refer to alcoholic malt beverages that exhibit little or no traditional beer or malt beverage character and whose flavor is derived in whole or in *Page 51 
part from added distilled spirits flavors rather than from malt and other materials used in fermentation.[5]
 II Analysis
A. Statutory Provisions
The laws that regulate and require licenses for the manufacture, sale, and distribution of alcoholic beverages in Maryland are set forth in Article 2B of the Annotated Code of Maryland. The laws governing the taxation of alcoholic beverages are set forth in the Tax-General Article ("TG"), §§ 5-101 et seq.
Both statutes broadly define "alcoholic beverages" to include a "liquor, liquid, or compound" that is fit for beverage purposes and contains one-half of 1% or more of alcohol by volume. TG § 5-101(b); Article 2B § 1-102(a)(2)(i).[6] An alcoholic preparation is fit for beverage purposes if it is "capable of being used as a beverage and is sold with the purpose or understanding that it is to be used as *Page 52 
a beverage." Powell v. State, 179 Md. 399, 405, 18 A.2d 587 (1941).
Beyond the threshold determination whether a substance falls within the definition of "alcoholic beverage," Maryland law defines several categories of alcoholic beverages and provides different tax rates and licensing requirements for each category. The categories of "beer" and "distilled spirits" pertain here. These categories are not distinguished by the percentage of alcohol in a beverage.
For purposes of taxation, "beer" means "a brewed alcoholic beverage" and includes ale, porter, and stout. TG § 5-101(d). Similarly, for licensing and other regulatory purposes, Article 2B defines beer as "any brewed alcoholic beverage and includes beer, ale, porter and stout." Article 2B, § 1-102(a)(3).
"Distilled spirits" means a distilled alcoholic beverage and includes alcohol, brandy, cordials, gin, liqueur, rum, vodka, whiskey and "solutions or mixtures of distilled spirits except fortified wines." TG § 5-101(g) (emphasis added). Article 2B does not define "distilled spirits."
Whether a beverage falls within the definition of "beer" or "distilled spirits" is significant for licensing and taxation purposes. With regard to licensing, distilled spirits can be sold only by retailers who hold a retail liquor license. Neither a beer nor a beer and wine license authorizes the holder to sell distilled spirits. See, e.g., Article 2B, § 3-101(a) (Beer License), § 6-101(a) (Beer, Wine and Liquor License). With regard to taxation, Maryland excise tax rates for beer and distilled spirits are $.09 and $1.50, respectively, per gallon (or 128 ounces). TG § 5-105(a), (c).
We must read these various statutory provisions together as part of a consistent and harmonious body of law. See Maryland National CapitalPark and Planning Comm'n v. Anderson, 395 Md. 172, 182-83, 909 A.2d 694
(2006). Accordingly, because of the separate tax and licensing provisions, FMBs are either beer or distilled spirits under Maryland law, but cannot be both. In addition, we must apply these definitions to FMBs in light of the State's express policy of "foster[ing] and promot[ing] temperance" and of "promot[ing] the general welfare of its citizen by controlling the sale and distribution of alcoholic beverages" expressly set forth in Maryland's Alcoholic Beverages law. See
Article 2B, § 1-101(a)(1) and (b)(1). *Page 53 
The FMB manufacturing process removes most, if not all, brewed beverage attributes and most of the fermented beer base. 70 Fed. Reg. 195. In its stead, that process adds distilled spirits, which then constitute most of the alcohol in the resulting beverage. Id. Thus, although FMBs start out as "brewed alcoholic beverages," they end up as "solutions or mixtures of distilled spirits"[7] and therefore fall squarely within the definition of "distilled spirits." TG § 5-101(g). On the other hand, because Maryland's definition of "beer" does not similarly include "solutions or mixtures" of beer, FMBs do not fall within the definition of beer. Therefore, based on the applicable statutory definitions and the information provided by the TTB, FMBs constitute "distilled spirits" and not "beer" under Maryland law.[8]
B. Legislative History
The history of Maryland's alcoholic beverage laws demonstrates that unless an alcoholic beverage meets the specific definitions of "beer" or "wine," the Legislature intended to encompass it within the broader category of distilled spirits. *Page 54 
From the General Assembly's enactment of Article 2B in 1933 up to the enactment of the Tax-General Article in 1988, Article 2B defined the terms "alcoholic beverage," "beer," "wine," and "light wine" and but did not define "distilled spirits." Instead, the law used phrases such as "distilled spirits and other alcoholic beverages except beer and wine" to distinguish distilled spirits (or liquor). See, e.g., Annotated Code of Maryland (1939), Article 2B, § 48 ("There shall be levied and collected on all distilled spirits and other alcoholic beverages except beer and wine. . .a tax at the rate of . . . $1.25 per gallon . . ."); Article 2B, §§ 3-7 (requiring a "beer license" or "beer and light wine license" to sell those defined alcoholic beverages, while requiring a "beer, wine and liquor license" to sell "all alcoholic beverages"). Consequently, unless an alcoholic beverage specifically came within the definitions of beer or wine, it was treated as distilled spirits (or liquor) for tax and licensing purposes.
It was not until 1988, when the General Assembly enacted the Tax-General Article, that the term "distilled spirits" was separately defined to include various specified beverages as well as mixtures of distilled spirits. Chapter 2, Laws of Maryland 1988. The Revisor's note explained: "This subsection is new language added for clarity and to avoid repetition of phrases such as "alcoholic beverages, except beer and wine." Thus, the definition of distilled spirits in the Tax-General Article was intended to recognize the broad, default category of alcoholic beverages that had previously been identified by various longer phrases. A beverage that does not fit the definition of "beer" or "wine" — i.e., an "other alcoholic beverage except beer and wine" — thus has always belonged to the category now denominated "distilled spirits."
C. Administrative Practice
In construing a statute, the courts often defer to a consistent and long-standing construction given a statute by an agency charged with administering it. Stachowski v. Sysco Food Services of Baltimore,Inc., 402 Md. 506, 517, 937 A.2d 195 (2007). In determining whether to defer to an agency's interpretation, one must take into account several factors:
 The weight given an agency's construction of a statute depends on several factors — the duration and consistency of the administrative practice, the degree to which the agency's construction was made known to *Page 55 
the public, and the degree to which the Legislature was aware of the administrative construction when it reenacted the relevant statutory language. Other important considerations include the extent to which the agency engaged in a process of reasoned elaboration in formulating its interpretation and the nature of the process through which the agency arrived at its interpretation, with greater weight placed on those agency interpretations that are the product of adversarial proceedings or formal rules promulgation. An administrative agency's construction of the statute is not entitled to deference, however, when it conflicts with the unambiguous statutory language.
Id., quoting Marriott Employees v. MVA, 346 Md. 437, 445, 697 A.2d 455
(1997) (internal citations omitted; emphasis added).
We understand that, in practice, FMBs have been treated, for Maryland's tax and regulatory purposes, as though they fit the definition of beer. For example, in an April 2002 letter, an official of the Comptroller's Office advised that "retail licensees who hold a beer license should be authorized to purchase, sell and distribute [the malt beverage based product, Skyy Blue, which is distributed by Miller Brewing Company] as they can any other malt beverage." Letter of CharlesW. Ehart, Director, Alcohol Tobacco Tax Division, Comptroller's Office, to Carroll County Board of License Commissioners (April 29, 2002). The letter offered the following rationale:
 This product is considered a malt beverage based on a determination by the Bureau of Alcohol, Tobacco and Firearms. Moreover the Comptroller has a regulation that adopts federal standards with regard to labeling and content. Therefore, this product is considered a malt beverage in all respects, including for taxation, class of license need to sell and distribute, etc.
See also Notice to Maryland Beer Wholesalers regarding Instructions for Completing Form COT/AATD-03702 (June 21, 2002) ("the category of products commonly known as *Page 56 
`malternatives' is to be included, along with beer coolers and ciders, in the column titled `Other Beer Products'").[9]
This interpretation does not appear to be the product of "reasoned elaboration" through rulemaking or adversarial proceedings. Rather, it is a relatively recent and informal interpretation.[10] Moreover, the rationale offered in the April 2002 letter was apparently based on a misunderstanding of the applicable law in several respects. First, the federal determination referenced in the letter (ATF Ruling 96-1 described in footnote 2 above) was that FMBs may contain alcohol derived only from the fermentation process — a determination held in abeyance pending rulemaking, which was not completed until 2005. Second, the federal determination was not binding on the Comptroller. No Maryland statute or regulation incorporates federal classifications of alcoholic beverages.[11] Cf. COMAR 03.02.01.06 (requiring that "standard of fill" and labels must be set or approved by TTB, while neither mentioning alcoholic beverage classifications nor requiring adoption of federal alcohol classifications).[12] Finally, the letter failed to take *Page 57 
into account the Maryland statutory definitions of "distilled spirits" and "beer."
For all of those reasons, we do not believe that a court would defer to the past administrative practice of the Comptroller's Office, especially given the statutory provisions. As the Court of Appeals has stated:
 Where the [statutory] language is clear and explicit, and susceptible of a sensible construction, it cannot be controlled by extraneous considerations. No custom, however long and generally it has been followed by officials, can nullify the plain meaning and purpose of a statute. An administrative practice contrary to the plain language of a statute is a violation of the law; and a violation of the law, even though customary, does not repeal the law.
Bouse v. Hutzler, 180 Md. 682, 687, 26 A.2d 767 (1942); see alsoComptroller v. American Cyanamid Co., 240 Md. 491, 506 214 A. 2d 596
(1965) ("There can be no challenge to the proposition that the Comptroller cannot by rule or otherwise make taxable that which the Legislature has excluded or exempted from taxation and cannot exclude or exempt that which the law says is taxable").
D. Consequences of Applying Distilled Spirits Classification
Because beer and distilled spirits are subject to different tax and licensing provisions, the determination that FMBs constitute "distilled spirits" affects both the licensing and taxation of those beverages. With regard to licensing, as noted above, FMBs should be sold only by retailers who hold a retail liquor license. Neither a beer nor a beer and wine license would authorize the holder to sell FMBs. *Page 58 
In addition, as noted above, the Maryland excise tax rates for beer and distilled spirits are $.09 and $1.50, respectively, per gallon (or 128 ounces). Thus, taxing FMBs as distilled spirits would result in net increased state excise taxes of $1.41 per gallon. We understand that a number of FMBs are sold in cartons of six 12-ounce bottles (72 ounces) for approximately $7 or $8. As distilled spirits, the net increase in excise tax would be $0.79 per six pack.
The transition from current practice to application of current law[13] may require appropriate notice to affected stakeholders, revision of notices, forms, and instructions, and other matters. This Office stands ready to advise the Comptroller's Office in determining an orderly and fair manner in which to implement the law.
 III Conclusion
For the reasons set forth above, it is our opinion that FMBs fall within the category of distilled spirits in the Maryland laws governing the taxation and licensing of alcoholic beverages.
 Douglas F. Gansler Attorney General
 Marlene Trestman Special Assistant to the Attorney General
 Robert N. McDonald Chief Counsel Opinions and Advice
[1] FMBs include Diageo's Smirnoff Ice, Anheuser-Busch's Bacardi Silver, Miller Brewing Company's Skyy Blue, Mike's Hard Lemonade, and Brown Forman's Lynchburg Lemonade and Downhome Punch. Alcoholic energy drinks, including Miller Brewing Co.'s Spark's and Anheuser-Busch's Bud Extra (formerly B to the E) and Tilt also may be FMBs.
[2] The TTB and its predecessor agency, the Bureau of Alcohol, Tobacco and Firearms ("ATF"), have made various determinations concerning FMBs for purposes of federal laws governing the taxation, labeling, and advertising of alcoholic beverages.
In 1996, the ATF determined that malt beverages, as defined under the Federal Alcohol Administration Act, 27 U.S.C. § 211(a)(7), may only contain alcohol which is the result of alcoholic fermentation at the brewery. ATF Ruling 96-1. In March 2003, TTB initiated rulemaking on Notice No. 4, which would have permitted alcoholic malt beverages to derive up to one-half of one percent (0.5%) of total alcohol by volume from the addition of distilled spirits. 68 Fed. Reg. 14292 (March 24, 2003), corrected at 68 Fed. Reg. 15119 (March 28, 2003). In January 2005, TTB issued a final rule, effective January 3, 2006, adopting a so-called "51/49" standard. This means that FMBs with no more than 6% alcohol by volume may derive as much as 49% of their alcohol from distilled spirits and still be considered beer. 70 Fed. Reg. 194, 234 (January 3, 2005), codified at 27 CFR § 7.10 et seq., § 25.15 etseq. For FMBs with 6% or more alcohol by volume, the TTB rule provides that FMBs may derive no more than 1.5% of their alcohol by volume from distilled spirits.
When it issued the rule, the TTB expressly acknowledged that states have concurrent jurisdiction regarding the classification of FMBs and that "brewers, wholesalers and retailers must follow State laws on these issues, regardless of what standard TTB adopts." 70 Fed. Reg. 219-20. The TTB further stated: "As already noted in this preamble, while most States look to Federal guidance in this area and rely on Federal classification of alcoholic beverages, there is certainly no requirement for them to do so. Thus, individual States may take a different view of the classification and taxable status of these products, and may reclassify FMBs as distilled spirits products, perhaps even before the effective date of this final rule." 70 Fed. Reg. 230.
[3] See, e.g., Center for Science in the Public Interest,Alcopops: Main Findings — What Teens and Adults are Saying AboutAlcopops (2001) (finding that 51% of teens ages 17-18 and 35% of teens ages 14-16 have tried FMBs while less than a quarter of adults have done so); Johnston, L.D., O'Malley, P.M., Bachman, J.G. Schulenberg, J.E.,Monitoring the Future — National Survey Results on Drug Use, 1975-2006.Volume I: Secondary School students (NIH Publication No. 07-6205), (Bethesda, MD: National Institute on Drug Abuse 2007) (finding that 13% of eighth graders, 24.7% of tenth graders and 29.3% of high school seniors reported drinking FMBs in the past month; annual and lifetime FMB usage for twelfth graders was 55% and 70%, respectively); American Medical Association, Teenage Drinking Survey Results(2004) (available athttp://www.alcoholpolicymd.com/pdf/girlie_ drinks_survey%20.pdf
(estimating that 33% of American teen girls have tried FMBs and 82% of them believe these beverages taste better than beer and other alcoholic drinks).
[4] See, e.g., California Medical Association Resolution 710-07, "Reclassification of Alcopops," adopted October 29, 2007 (resolving to support regulations that would classify Alcopops as distilled spirits); American Public Health Association, Section on Alcohol, Tobacco and Other Drugs, "Advocates Across the Country Work to Reclassify Youth Appealing Alcohol Beverages," Winter 2007, available atwww.apha.org/membergroups/newsletters/sectionnewsletters/alcohol/
winter07/alcopops.htm (expressing support for taxing FMBs at distilled spirit tax level to make them less affordable and less accessible to youth); The Surgeon General's Call to Action to Prevent and ReduceUnderage Drinking. U.S. Department of Health and Human Services, Office of the Surgeon General (2007) (citing research that raising the price of cost of underage drinking, including its price, can positively affect adolescent decisions about alcohol use); International Institute for Alcohol Awareness, Policy Brief: Flavored Alcoholic Beverages — The Wolfin Sheep's Clothing (2006), available at http://www.iiaaonline.org/pdf/IIAAPolicyBrief_April06_web.pdf.
[5] Similarly, the TTB's study "did not examine malt beverages labeled and marketed as flavored beers, flavored ales, and so forth (such as `cherry beer' or `pumpkin ale') since these types of malt beverages typically have the character of malt beverages and their alcohol is derived primarily from fermentation." 70 Fed. Reg. at 195.
[6] TG § 5-101(b) states:
 (1) "Alcoholic beverage" means a spirituous, vinous, malt, or fermented liquor, liquid or compound that: (i) is fit for beverage purposes; and (ii) contains one-half of 1% or more of alcohol by volume.
 (2) "Alcoholic beverage" includes: (i) beer; (ii) distilled spirits; and (iii) wine.
Similarly, in relevant part, Article 2B defines "alcoholic beverages" as "alcohol, brandy, whiskey, rum, gin, cordial, beer, ale, porter, stout, wine, cider, and any other spirituous, vinous, malt or fermented liquor, liquid, or compound, by whatever name called, which contains . . . one-half of one percent or more of alcohol by volume, which is fit for beverage purposes." Article 2B, § 1-102(a)(2)(i).
[7] As long as the flavors added to the FMB base contain at least one half of one percent alcohol by volume, and are used to form a "spirituous, vinous, malt, or fermented liquid, liquor or compound that . . . is fit for beverage purposes," such flavors satisfy the threshold definitions of alcoholic beverage and distilled spirits in the context of FMBs. The fact that the flavors, obtained from distillation, were not independently labeled or marketed as distilled spirits prior to their use in FMBs does not alter their intended purpose, content, or effect on the final product at issue here. See Powell, supra, at 405.
[8] The Attorneys General of California and Connecticut, after analyzing statutes which similarly define distilled spirits or liquor to include mixtures thereof, each advised the liquor control and tax authorities in their states that FMBs were improperly being taxed as"beer." Letter from California Attorney General Bill Lockyer toDennis Maciel, Chief, California State Board of Equalization (May 24, 2005); Letter from Connecticut Attorney General Richard Blumenthalto Honorable Edwin Rodriguez, Chair, Connecticut Liquor Control Commission (October 31, 2006). By contrast, the Nebraska Attorney General found that the Nebraska law was ambiguous with respect to classification of FMBs, and concluded that the State liquor control commission had discretion to treat FMBs as beer. Neb. Op. Atty. Gen. No. 06011, 2006 WL 2089896 (Jan. 3, 2006).
[9] This Notice did not offer any rationale for the instruction given to Maryland Beer Wholesalers that deliveries of "malternatives" were to be treated as "Other Beer Products" on the Comptroller's form.
[10] While this interpretation was apparently shared with local liquor boards and beer wholesalers, we are not aware of circumstances under which it was made known more generally to the general public or the Legislature.
[11] This misunderstanding was repeated in a 2003 letter to the TTB.Letter of Charles W. Ehart to William Foster, TTB's Chief ofRegulation and Procedures Division (July 28, 2003) (expressing support for the TTB's then proposed 0.5% alcohol by volume standard for FMBs and stating "Since Maryland adopts federal standards with respect to labeling and content of alcoholic beverages, we are prepared to apply whatever standards your agency ultimately determines to be most appropriate").
[12] The first subpart provides, "A. The standard of fill for containers of wine or distilled spirits shall be identical with those of the Alcohol and Tobacco Tax and Trade Bureau." The second relevant subpart states, "C. Before a label may be sold and distributed in Maryland, the label shall be approved by the Alcohol and Tobacco Tax and Trade Bureau." COMAR 03.02.01.06.
Maryland's alcoholic beverage statutes do not define "malt beverage." Therefore, presumably, the label of an FMB that states "malt beverage" may be approved by TTB while, at the same time, the FMB would be taxed and licensed in Maryland as distilled spirits.
[13] Legislation has been proposed during the current session to include FMBs within the statutory definitions of "beer." See Senate Bill 745/House Bill 879 (2008). *Page 59